# Exhibit A

**SUPREME COURT STATE OF NEW YORK**
**COUNTY OF KINGS**
----------------------------------------------x
**DORINA SOKOLOVSKY,**

      **PLAINTIFF,**

      **v.**                           **SUMMONS**
                                       **INDEX NO.**

**OORAH, INC.; OORAH CATSKILL**
**RETREAT LLC a/k/a "THE ZONE"; and**
**GITTIE SHEINKOPF,**

      **DEFENDANTS.**
-------------------------------------------------x

TO THE ABOVE-NAMED DEFENDANTS:

OORAH, INC.; OORAH CATSKILL RETREAT LLC aka "THE ZONE';
1805 Swarthmore Ave.
Lakewood, New Jersey 08701

964 S. Gilboa Rd.
Gilboa, New York 12076

GITTIE SHEINKOPF
c/o Oorah, Inc.
1805 Swarthmore Ave.
Lakewood, New Jersey 08701

964 S. Gilboa Rd.
Gilboa, New York 12076

      **You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure**

1

**to appear to answer, judgment will be taken against you by default for the relief demanded in the complaint.**

The basis of venue is where one or more plaintiffs reside, which is Kings County, New York.

Dated:   Rochester, NY
         August 5, 2020           JAMES VERNON & WEEKS, P.A.

By:_____
    Leander James, ljames@jvwlaw.net
    Craig Vernon, cvernon@jvwlaw.net
    James, Vernon & Weeks, PA
    1626 Lincoln Way, Coeur d'Alene, ID 83814
    And - 20 Vesey Street, New York, NY 10007
    (888) 667-0683

    Patrick Noaker, patrick@noakerlaw.com
    1600 Utica Ave. S, 9th Fl.
    St. Louis Park, MN 55416
    (952) 491-6798

2

SUPREME COURT STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------x

DORINA SOKOLOVSKY,

        PLAINTIFF,

        v.

OORAH, INC.; OORAH CATSKILL
RETREAT LLC a/k/a "THE ZONE"; and
GITTIE SHEINKOPF,

        DEFENDANTS.

-------------------------------------------x

                         **VERIFIED COMPLAINT**

                         **INDEX NO.**

Plaintiff, DORINA LEAH SOKOLOVSKY, by and through undersigned counsel, complaining of the Defendants, upon information and belief, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This Complaint arises from the sexual battery of Plaintiff Dorina Leah Sokolovsky ("Plaintiff") by Defendant Gittie Sheinkopf ("Defendant Sheinkopf" or "Sheinkopf") that occurred for approximately a year in 2010, when Plaintiff was approximately fifteen years old. Sheinkopf, who was known at the time as Gittie Kohn, was Assistant Camp Director, Plaintiff's mentor and Plaintiff's camp counselor at a Jewish summer camp known as The Zone, owned and operated by Defendants Oorah, Inc. and Oorah Catskill Retreat LLC. Sheinkopf served as the assistant to the camp director of The Zone and was an employee and/or agent of Defendants Oorah, Inc. and Oorah Catskill Retreat LLC.

2.    Plaintiff Dorina Leah Sokolovsky is an adult resident of the State of New York and is otherwise *sui juris*.

1

3.    Defendant Oorah, Inc. is a not for profit organization created in 1972 by Rabbi Chaim Mintz with a principal place of business at 1805 Swarthmore Ave., Lakewood, New Jersey 08701. Oorah, Inc. is licensed as a foreign not-for-profit corporation with the New York Department of State, Division of Corporations. At all relevant times, Defendant Oorah, Inc. oversaw, managed, controlled, directed, and operated The Girl Zone summer camp, located in the upper Catskill region of New York, at 964 South Gilboa Road, Gilboa, NY 12076. At all relevant times, Defendant Oorah, Inc. oversaw, managed, controlled, and directed the camp counselors, directors, and mentors hired to work at The Zone, including Defendant Sheinkopf.

4.    Defendant Oorah Catskill Retreat LLC is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at 1804 Swarthmore Ave., Lakewood, New Jersey, 08701. Upon information and belief, at all relevant times, Defendant Oorah Catskill Retreat LLC owned, operated, oversaw, managed, controlled, and directed The Zone summer camps for girls, located in the upper Catskill region of New York, at 964 South Gilboa Road, Gilboa, NY 12076. Upon information and belief, at all relevant times, Defendant Oorah Catskill Retreat LLC oversaw, managed, controlled, and directed the camp counselors, directors, and mentors hired to work at The Zone, including Defendant Sheinkopf.

5.    At relevant times, Defendant Sheinkopf was the assistant to the camp director, and a camp counselor and mentor at The Zone summer camp. Defendants Oorah, Inc. and Oorah Catskill Retreat LLC (hereafter referred to collectively as "Oorah Defendants") employed, supervised, and managed Defendant Gittie Sheinkopf, including employing her as the assistant to the camp director and as a camp counselor and mentor at The Zone where Defendants exposed her to children, including Plaintiff. Sheinkopf was at all relevant times an employee and/or agent of

2

Oorah Defendants.

6.      This Court has personal jurisdiction over the Defendants pursuant to CPLR § 301

and § 302. Defendant Oorah Catskill Retreat LLC has its principle place of business in the State

of New York and the tortious acts and omissions giving rise to this Complaint were committed

within the State of New York.

7.      Jurisdiction is proper because this Complaint seeks monetary damages in excess of

$25,000.00, exclusive of interest, costs, and attorney's fees.

8.      Venue is proper in this Court pursuant to CPLR § 503. Plaintiff resides in Kings

County. Further, some of the acts and omissions giving rise to this Complaint occurred in Kings

County.

9.      The provisions of Section 1602 of the CPLR do not apply to the within action

including nondelegable duty and/or the doctrine of respondeat superior.

10.     Plaintiff brings this suit within the extended time period as provided for in Sections

208 and 214-G of the Civil Practice Law and Rules.

## FACTS COMMON TO ALL CLAIMS AND FIRST CAUSE OF ACTION;

## NEGLIGENCE OF OORAH, INC.; OORAH CATSKILL RETREAT LLC a/k/a "THE

## ZONE"; and GITTIE SHEINKOPF

### (a) Plaintiff's Introduction to Sheinkopf; The Abuse

11.     Plaintiff Dorina Leah Sokolovsky did not grow up in a religious family. She was

raised by a single mother who paid for her children to attend The Zone, an Orthodox Jewish

summer camp owned and operated by Oorah Defendants. Employees of The Zone, including

Defendant Sheinkopf, introduced Plaintiff to the Orthodox Jewish faith, and she developed a strong

desire to be involved in that religious community.

3

12.     In the summer of 2010, Plaintiff attended The Zone summer camp for girls. Oorah Defendants assigned Defendant Sheinkopf to be Plaintiff's spiritual mentor, with the goal that through Sheinkopf's mentorship, Plaintiff would learn more about the Orthodox faith and become more observant of Orthodox traditions. At the time of their introduction, Defendant Sheinkopf was the assistant to the camp director of The Zone and was an employee and/or agent of Oorah Defendants.

13.     During the summer of 2010, Plaintiff was approximately fifteen-years-old and Defendant Sheinkopf was approximately twenty years old.

14.     Plaintiff's mother trusted Defendant Sheinkopf because of her position as the assistant to the camp director at The Zone. Plaintiff's mother would not have trusted Defendant Sheinkopf to serve as Plaintiff's spiritual mentor and to provide private religious instruction to Plaintiff if not for the reputation and trust she placed in Oorah Defendants to properly hire and supervise their directors, counselors, mentors, and employees.

15.     Sheinkopf immediately took Plaintiff under her wing at The Zone summer camp and Plaintiff developed great trust, respect, and reverence for Sheinkopf and her role in Plaintiff's life. Plaintiff looked up to Sheinkopf as a role model, because Sheinkopf was older, religious and the assistant to the camp director. Plaintiff desperately wanted to be more religious and feel like she belonged in the Orthodox Jewish community, a traditionally tight-knit community.

16.     While at The Zone camp, Sheinkopf began sending Plaintiff emails and messages. In these messages and emails, Sheinkopf called Plaintiff her favorite little girl, told Plaintiff she was beautiful and that Sheinkopf loved her. These emails show Sheinkopf's inappropriate obsession with Plaintiff, a minor. For example, one email involves Sheinkopf telling Plaintiff she's the "prettiest one of all" and that Sheinkopf can't take her eyes off Plaintiff. Further, another email

4

sent from Sheinkopf to Plaintiff depicts a man in a costume resembling a vagina. Sheinkopf sent Plaintiff many inappropriate emails in 2010 and 2011. She also sent Plaintiff love letters with increasingly possessive language.

17.     Sheinkopf sexually assaulted, sexually molested and/or sexually abused Plaintiff on and off Defendants' camp premises, but always within the course and scope of her agency for Defendants while acting as a mentor and counselor for Plaintiff, and as Defendants' Assistant Camp Director. After the first year of Plaintiff's attendance at the Camp, Sheinkopf maintained contact with Plaintiff, including at Camp sponsored events in Brooklyn and at her home.

18.     Beginning in late Summer 2010, Sheinkopf invited Plaintiff over to her house in Brooklyn for Shabbat. Oorah Defendants highly encouraged these invitations and Sheinkopf's mentorship of Plaintiff to continue Plaintiff's understanding of Orthodox practices. Within a few months of Plaintiff sleeping over at Sheinkopf's house, Sheinkopf began to sexually assault Plaintiff during the night.

19.     On one occasion, Sheinkopf closed the door to her room and pushed the two twin beds in her room together to form a larger bed. When Plaintiff laid down to go to sleep, Sheinkopf reached over and held Plaintiff very tightly against her. Sheinkopf put her arm around Plaintiff and touched her breasts, pinching her nipples. Sheinkopf then took Plaintiff's hand and pushed it inside Sheinkopf's pants, underneath her underwear. Plaintiff tried to pull her hand away, but the more she resisted, the more forcefully Sheinkopf held her hand in place. Sheinkopf pushed her fingernails into the back of Plaintiff's hand as a punishment if Plaintiff attempted to remove her hand from Sheinkopf's genitals or turn her body so she could go to sleep.

20.     The morning after this first incident, Plaintiff confronted Sheinkopf about her actions and asked Sheinkopf if she remembered what she did to Plaintiff during the night.

5

Sheinkopf insisted she didn't and tried to convince Plaintiff that she was a deep sleeper. At first, Plaintiff chose to believe Sheinkopf because she couldn't understand why Sheinkopf would want to harm her. But the abuse continued to happen and escalated over time.

21.     One night, Sheinkopf pushed her hand inside Plaintiff's underwear and penetrated Plaintiff's vagina with her fingers, causing Plaintiff pain and bleeding.

22.     The abuse continued for approximately a year, and included sexual touching on Defendants' camp premises. Defendants fostered and/or tolerated a culture of sexual abuse of minors at their camp. Another comp counselor engaged in sexual misconduct with Plaintiff, and other girls engaged in sexual misconduct.

23.     As a direct and proximate result of Sheinkopf's offensive and unwanted sexual touching, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

24.     As a direct and proximate result of Sheinkopf's offensive and unwanted sexual touching, Plaintiff has been prevented and will continue to be prevented from performing her normal daily activities and obtaining the full enjoyment of life.

25.     As a direct and proximate result of Sheinkopf's offensive and unwanted sexual touching, Plaintiff has incurred and will incur expenses for medical and psychological treatment, therapy, and counseling.

**(b) Defendants' Responsibility for the Abuse Committed by Sheinkopf**

26.     At all times relevant, upon information and belief, Oorah Defendants were the legal owners and/or tenant/occupiers of The Zone, a girls summer camp located at 964 South Gilboa

6

Road, Gilboa, NY 12076.

27.     Upon information and belief and at all times relevant to the allegations set forth herein, Sheinkopf was Assistant Camp Director, a camp counselor and mentor employed, trained, supervised, and managed by Oorah Defendants and was an employee and/or agent for said Defendants. All acts and omissions of Sheinkopf were done in the course and scope of her employment and/or agency for Oorah Defendants.

28.     Upon information and belief and at all times relevant to the allegations set forth herein, Rabbi Binyomin Gissinger (Rabbi Gissinger) was Defendants' Camp Director and was an employee and/or agent for Oorah Defendants. All acts and omissions of Rabbi Gissinger were done in the course and scope of his employment and/or agency for Oorah Defendants.

29.     Upon information and belief, Oorah Defendants knew or should have known that Defendant Sheinkopf posed a sexual danger and risk of harm to children at The Zone girls camp, including Plaintiff. By virtue of Defendants' agent and Assistant Camp Director knowing she posed a risk of harm to Plaintiff, Defendants had notice of the same. Sheinkopf's inappropriate obsession and close relationship with Plaintiff was clearly visible to administrators at The Zone. Additionally, Sheinkopf sent Plaintiff inappropriate correspondence using The Zone's fax machine, such that employees at The Zone could see the correspondence. Rabbi Binyomin Gissinger had actual knowledge that his Assistant Camp Director was involved in an inappropriate relationship with Plaintiff.

30.     Rabbi Binyomin Gissinger, the Girl Zone Camp Director, and an employee and agent for Oorah Defendants noticed enough of the inappropriate conduct that in February 2011 he expressed concern that Sheinkopf's relationship with Plaintiff was unhealthy and obsessive. Rabbi Gissinger confronted Plaintiff, the victim, about his observations. Sheinkopf, upon hearing of

7

Rabbi Gissinger's conversation with Plaintiff, instructed Plaintiff to send an email to Rabbi Gissinger to dispel his concerns. This email was written entirely by Sheinkopf and is a further example of Sheinkopf's manipulation and control over Plaintiff. Rabbi Gissinger replied to Plaintiff's email, written by Sheinkopf, with "Thank you for your input." He and Defendants took no action to protect Plaintiff from Sheinkopf.

31.     Despite knowledge that Sheinkopf was engaged in an inappropriate relationship with Plaintiff, Rabbi Gissinger, acting as an agent for Oorah Defendants, did not remove Sheinkopf from her position of authority over children, as assistant to the camp director, camp counselor, and mentor to Plaintiff. Rabbi Gissinger did not prohibit Sheinkopf from having a relationship with Plaintiff and he did not investigate further. Rabbi Gissinger continued to negligently expose Plaintiff to Sheinkopf, a sexual predator, causing Plaintiff injury and damages. He further negligently took no action to protect Plaintiff, causing Plaintiff additional injuries and damages. All his actions and inactions were done in the course and scope of his agency for Oorah Defendants, and each of them.

32.     Sheinkopf's sexual abuse of Plaintiff continued through 2011 and included abuse on The Zone camp premises. A culture of child sexual abuse developed at The Zone camps, with the head counselor, other counselors and staff engaging in sexual misconduct and abuse of Plaintiff over the course of three summers, including but not limited to skin-on-skin fondling of the breasts and genitals and penetration of Plaintiff's vagina. Upon information and belief, other children were subjected to similar sexual misconduct at The Zone camp. This sexual misconduct was so widespread that Defendants, through their agents, knew or should have known it was happening.

33.     By holding Sheinkopf out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, Oorah Defendants entered into a special

8

relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by each of the

Defendants' undertaking the care and guidance of the then vulnerable Plaintiff, Oorah Defendants

held a position of empowerment over Plaintiff.

34.     Furthermore, Oorah Defendants, by holding themselves out as being able to provide

a safe environment for children, solicited and/or accepted this position of empowerment. This

empowerment prevented the Plaintiff from effectively protecting herself, and each Defendant thus

entered into a special relationship with Plaintiff. By holding themselves out as a safe, moral, and

trusted institution to Plaintiff's parents, Oorah Defendants induced Plaintiff's mother to entrust her

child to Defendants and thereby deprived Plaintiff of the protection of her family.

35.     At all times material, Defendant Sheinkopf's sexual abuse of Plaintiff was

foreseeable.

36.     Oorah Defendants allowed Defendant Sheinkopf to have unsupervised and

unlimited access to minor children, at The Zone summer camp in Gilboa, New York, at Defendant

Sheinkopf's home in Brooklyn, New York, and at various Oorah events throughout the State of

New York.

37.     Upon information and belief, at all times material, Sheinkopf was employed by

Oorah Defendants and was an agent of said Defendants.

38.     At all times material, Sheinkopf remained under the direct supervision, employ,

and control of Oorah Defendants.

39.     Upon information and belief, before Plaintiff was sexually abused by Defendant

Sheinkopf, Oorah Defendants had actual or constructive knowledge of material facts regarding

Sheinkopf's sexual misconduct, impulses, and behavior.

40.     Despite clear indications of danger, Oorah Defendants took no steps to discover the

9

specific nature of Sheinkopf's problems or to determine whether she was fit to work with children or to protect children from her, thereby increasing the likelihood that Plaintiff would be harmed.

41.     Plaintiff was not raised in a devout Orthodox Jewish family, but her mother paid for Plaintiff to attend The Zone, an Orthodox Jewish summer camp, to bring Plaintiff closer to the Jewish, Orthodox faith. Through attendance at this camp and interactions with the camp's leaders, including Defendant Sheinkopf, Plaintiff developed great admiration, trust, reverence, and respect for the Orthodox Jewish faith and culture, Defendant Oorah, Inc. and its agents, Defendant Oorah Catskill Retreat LLC and its agents, Rabbi Gissinger and all leaders of the faith including Defendant Sheinkopf specifically.

42.     Oorah Defendants held Sheinkopf out to the public in general, and to Plaintiff and her family specifically, as a trustworthy and safe religious leader, and undertook the education, religious instruction, and spiritual and emotional guidance of Plaintiff. Oorah Defendants exercised a direct role over Plaintiff. Accordingly, Plaintiff placed trust in Oorah Defendants so that said Defendants and their agents gained superiority and influence over Plaintiff. Oorah Defendants entered into a special relationship with the Plaintiff and her family.

43.     Oorah Defendants each owed Plaintiff a duty of reasonable care because each assumed duties owed to Plaintiff and had superior knowledge about the sexual risk of harm that Sheinkopf posed to Plaintiff, the risk of abuse in general at their camp and in their religious programs, and/or the risks that the camp and its leaders and mentors posed to minor children. Oorah Defendants had the duty to protect the moral purity of Plaintiff and other children within the camp.

44.     Oorah Defendants owed Plaintiff a duty of reasonable care because they assumed that duty and because they solicited youth and parents for participation in their camps and religious

10

programs.

45.     Oorah Defendants owed Plaintiff a duty of reasonable care because they undertook custody of minor children, including Plaintiff.

46.     Oorah Defendants owed Plaintiff a duty of reasonable care because they promoted their facilities and programs as being safe for children.

47.     Oorah Defendants owed Plaintiff a duty of reasonable care because they held out their agents, including Defendant Sheinkopf, as safe to work with children.

48.     Oorah Defendants owed Plaintiff a duty of reasonable care because they encouraged parents and children to spend time with their agents; and/or encouraged their agents, including Defendant Sheinkopf, to spend time with, interact with, and recruit children, including Plaintiff.

49.     Oorah Defendants had a duty to Plaintiff to protect her from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff.

50.     Oorah Defendants breached their duties by exposing Plaintiff to a known pedophile/ephebophile.

51.     Oorah Defendants breached their duties by exposing Plaintiff to a camp counselor and mentor Defendants knew or should have known was a pedophile/ephebophile.

52.     Oorah Defendants breached their duties by recruiting, hiring, and maintaining Defendant Sheinkopf in a position of authority over children.

53.     Oorah Defendants breached their duties by exposing Defendant Sheinkopf to children.

54.     Oorah Defendants breached their duties by leaving Defendant Sheinkopf alone with children unsupervised.

11

55.     Oorah Defendants breached their duties by inducing Plaintiff and her mother to entrust Plaintiff to Defendant Sheinkopf.

56.     Oorah Defendants breached their duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

57.     Oorah Defendants breached their duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

58.     Oorah Defendants breached their duties by failing to adequately inform families and children of the known risks of child sex abuse within their camp and religious programs.

59.     Oorah Defendants breached their duties by holding out their employees and agents, including Sheinkopf, as safe and wholesome for children, including Plaintiff, to be with.

60.     Oorah Defendants breached their duties by failing to investigate risks and accusations of child molestation.

61.     Oorah Defendants breached their duties by failing to properly train the employees, including camp counselors, directors, and mentors, at The Zone regarding the risks of child sex abuse and the proper procedures to ensure the safety of the children attending the camp and religious programs offered by Oorah Defendants.

62.     Oorah Defendants breached their duties by failing to have any outside agency test their safety procedures.

63.     Oorah Defendants breached their duties by failing to protect the children in their summer camp and religious programs from child sex abuse and by failing to adhere to the applicable standard of care for child safety.

64.     Oorah Defendants breached their duties by failing to investigate the amount and

12

type of information necessary to represent the camp and its leaders and employees as safe.

65.    Oorah Defendants breached their duties by failing to respond to and/or investigate information of improper sexual conduct of their employees and/or agents, including Defendant Sheinkopf, with children.

66.    Oorah Defendants breached their duties by failing to properly train their employees to identify signs of child molestation and abuse by fellow employees, including Defendant Sheinkopf.

67.    Oorah Defendants breached their duty to use ordinary care in determining whether their facility was safe and/or to determine whether they had sufficient information to represent their facility as safe.

68.    Oorah Defendants breached their duty of care by recruiting, hiring, and maintaining Sheinkopf at their camp.

69.    Oorah Defendants breached their duty of care by maintaining a dangerous condition on the premises of their camp (i.e., an employee Oorah Defendants knew or should have known posed a risk of pedophilic harm to children).

70.    Oorah Defendants breached their duty of care by holding out the camp facility as a safe and moral place for children, which it was not.

71.    Oorah Defendants breached their duty of care by failing to have sufficient policies and procedures in place to prevent abuse at their facilities.

72.    Oorah Defendants breached their duty of care by failing to investigate risks and reports of child sexual abuse at their facilities.

73.    Oorah Defendants breached their duty of care by failing to properly train the workers at their facility and by failing to have any outside agency test their safety procedures.

13

74.     Oorah Defendants breached their duty of care by failing to investigate the amount and type of information necessary to represent their facilities as safe.

75.     Oorah Defendants breached their duty of care by failing to properly train their employees to identify signs of child molestation by fellow employees.

76.     Oorah Defendants breached their duty to Plaintiff by holding out camp leaders, mentors, and counselors, including Defendant Sheinkopf, as safe, moral, and trustworthy people and by failing to warn Plaintiff and her family of the specific risk of sexual harm that Sheinkopf posed and the known risks of child sexual abuse by employees in general.

77.     Oorah Defendants failed to warn Plaintiff and her family about any of the knowledge that the Defendants had about child sex abuse perpetrated by their employees in general or Sheinkopf specifically.

78.     Oorah Defendants breached their duties to Plaintiff by failing to report Sheinkopf's abuse of Plaintiff to the police and law enforcement.

79.     Oorah Defendants further breached their duties by hiding a pedophile and engaging in a cover-up of the abuse perpetrated by Sheinkopf.

80.     Oorah Defendants knew or should have known that some of the leaders, counselors, mentors, and people working at The Zone and for Oorah Defendants were not safe to be around children.

81.     Defendant Oorah, Inc. knew or should have known that they did not have sufficient information about whether or not their employees, leaders, counselors, mentors, staff and people working at their camp were safe around children.

82.     Oorah Defendants knew or should have known that there was a risk of child sex abuse for children attending their camp, interacting with their counselors, mentors, and staff,

14

and/or participating in their programs and activities.

83.    Oorah Defendants knew or should have known that they did not have sufficient information about whether or not there was a risk of child sex abuse for children attending their camp, interacting with their counselors, mentors, and staff and/or participating in their programs and activities.

84.    Oorah Defendants knew or should have known that they had other counselors, mentors, employees, and/or agents who had sexually molested children. Oorah Defendants knew or should have known that child molesters have a high rate of recidivism. Oorah Defendants knew or should have known that there was a specific danger of child sex abuse for children attending their camp, interacting with their counselors, mentors, staff and employees, and/or participating in their activities and programs.

85.    Oorah Defendants held their counselors, mentors, staff, leaders, employees and agents out as people of high morals and as possessing immense power, teaching families and children to obey, respect and revere these leaders and agents. Oorah Defendants solicited, marketed to, and recruited youth and families to their camps and religious programs.

86.    Oorah Defendants made negligent representations to Plaintiff and her family while Plaintiff was a minor. Plaintiff and her family relied upon these representations, which resulted in Plaintiff being put in a vulnerable situation with Sheinkopf, who harmed her.

87.    Defendant Sheinkopf engaged in unpermitted, harmful, and offensive sexual contact with the Plaintiff on the physical premises of and around Oorah Defendants, at Sheinkopf's house in Brooklyn, and at Oorah sponsored events throughout New York. Sheinkopf sexually assaulted Plaintiff when Plaintiff was a minor and without Plaintiff's consent.

88.    Oorah Defendants allowed Sheinkopf to have unsupervised and unlimited access

15

to young children at the camp, located currently and at the time of the events described herein at 964 South Gilboa Road, Gilboa, NY 12076.

89.     At all times material, Sheinkopf and Rabbi Gissinger were each employed by, and an agent of Oorah Defendants.

90.     At all times material, Sheinkopf and Rabbi Gissinger each remained under the direct supervision, employ, and control of Oorah Defendants.

91.     At all times material, Oorah Defendants had the right to control the manner and means of Sheinkopf's and Rabbi Gissinger's performance.

92.     At all times material, Oorah Defendants paid Sheinkopf and Rabbi Gissinger and paid for Sheinkopf's and Rabbi Gissinger's health insurance and/or other benefits.

93.     At all times material, Oorah Defendants furnished a location and other materials, supplies, and tools required for Sheinkopf to perform in her position as an Assistant Camp Director, counselor, spiritual mentor, and religious instructor.

94.     At all times material, Oorah Defendants furnished a location and other materials, supplies, and tools required for Rabbi Gissinger to perform in his position as Camp Director, spiritual mentor, and religious instructor.

95.     At all times material, Oorah Defendants controlled the premises where Sheinkopf performed as a camp counselor and spiritual mentor.

96.     At all times material, Oorah Defendants controlled the premises where Rabbi Gissinger performed as a camp counselor and spiritual mentor.

97.     At all times material, Oorah Defendants had the power to terminate the employment of Sheinkopf and Rabbi Gissinger.

16

98. Upon information and belief, before Plaintiff was sexually abused by Sheinkopf, Oorah Defendants had actual or constructive knowledge of material facts regarding Sheinkopf's sexual misconduct, impulses, and behavior, but failed to act on that knowledge and exposed Plaintiff as a child to Sheinkopf, thereby increasing the likelihood that Plaintiff would be sexually harmed. This knowledge included the knowledge of Oorah Defendants' agent and employee, Rabbi Binyomin Gissinger, who noticed the inappropriate and obsessive relationship Sheinkopf had with Plaintiff and failed to act on that knowledge, causing additional harm and abuse to come to Plaintiff. Sheinkopf herself had notice of her risk for sexual misconduct with minors, and as the Assistant Camp Director, her notice is imputed to Defendants.

99. As a direct and proximate result of Oorah Defendants' negligence, gross negligence, and breaches of duty, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful employment, loss of income and other losses and damages, past and future.

100. As a direct and proximate result of the negligence, gross negligence, and breaches of duty of Defendant Oorah Inc., Defendant Oorah Catskill Retreat LLC and Gittie Sheinkopf, and each of them, Plaintiff was prevented and will continue to be prevented from performing her normal daily activities and obtaining the full enjoyment of life.

101. As a direct and proximate result of the negligence, gross negligence, and breaches of duty of Defendant Oorah Inc., Defendant Oorah Catskill Retreat LLC and Gittie Sheinkopf, and each of them, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

102. Plaintiff's damages are in excess of the jurisdiction of all lower courts.

17

## AS FOR A SECOND CAUSE OF ACTION FOR
## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY AGAINST
## OORAH DEFENDANTS

103.   Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if fully set forth herein.

104.   Defendants employed Defendant Sheinkopf as the Assistant Camp Director, a camp counselor and a spiritual mentor to children attending The Zone summer camps, including Plaintiff. These duties included inviting children, including Plaintiff, over to her house to celebrate traditional Orthodox holy days and the sabbath.

105.   Defendants employed Rabbi Gissinger as the Camp Director and a spiritual mentor to children attending The Zone summer camps, including Plaintiff.

106.   Oorah Defendants created a master-servant relationship with Sheinkopf and Rabbi Gissinger, employing each to interact and supervise children attending The Zone camps and participating in youth and religious instruction programs there.

107.   The unwanted contact by Defendant Sheinkopf upon Plaintiff occurred during her regular working hours with Oorah Defendants while performing duties of a counselor and mentor on behalf of her employer.

108.   The acts, omissions, breaches of duty and negligence of Rabbi Gissinger  alleged herein occurred during his regular working hours as Camp Director and a spiritual mentor to children attending The Zone summer camps, including Plaintiff.   Said act, omissions, breaches of duty and negligence occurred in the course and scope of Rabbi Gissinger's employment with Oorah Defendants and are thereby imputed to each Oorah Defendant.

109.   The sexual contact by Sheinkopf occurred in the course and scope of her employment with Oorah Defendants.

18

110.    The sexual contact by Sheinkopf was generally foreseeable to Oorah Defendants.

111.    The sexual contact by Sheinkopf was closely connected to what she was employed to do as a counselor and mentor with Oorah Defendants, and/or was otherwise naturally incidental to her job duties.

112.    Defendant Sheinkopf's conduct was motivated, at least in part, by a desire to serve her employer's business interests or otherwise meet the objectives of her employment, however misguided.    Alternatively, Defendant Sheinkopf's conduct constituted an authorized, minor deviation from her employment that was authorized and/or ratified by Oorah Defendants.

113.    Rabbi Gissinger's conduct was motivated, at least in part, by a desire to serve his employers' business interests or otherwise meet the objectives of his employment, however misguided.

114.    As a direct and proximate result of Defendant Sheinkopf's conduct, Plaintiff has suffered damages for which Oorah Defendants, Sheinkopf's employer, is now liable.

115.    As a direct and proximate result of Rabbi Gissinger's conduct, acts, omissions and negligence, Plaintiff has suffered damages for which Oorah Defendants, his employer, is now liable.

### AS FOR A THIRD CAUSE OF ACTION FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION AGAINST OORAH DEFENDANTS

116.    Plaintiff repeats and realleges each and every allegation set forth in all paragraphs above as if fully set forth herein.

117.    At all material times, Oorah Defendants, by and through their agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect her safety, care, well-being and health while she was under the care and custody or in the presence of Oorah Defendants. These duties encompassed the use of reasonable care in the hiring, retention and

19

supervision of Defendant Sheinkopf and otherwise providing a safe environment for children.

118.    Prior to the sexual misconduct perpetrated by Defendant Sheinkopf upon Plaintiff, Oorah Defendants knew, or in the exercise of reasonable care, should have known, of the general problem of camp counselors, mentors, youth leaders, and any other persons employed in positions of authority over children engaging in sexual misconduct with children who were in summer camps, religious, and/or youth programs, including with Oorah Defendants.

119.    Prior to the sexual misconduct perpetrated by Defendant Sheinkopf upon Plaintiff, Oorah Defendants knew, or in the exercise of reasonable care, should have known, that Defendant Sheinkopf was unfit for the duties assigned to her, that she did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children, including Plaintiff.

120.    Given actual or constructive knowledge of Defendant Sheinkopf's dangerous propensities specifically, Oorah Defendants had a duty to act reasonably in all decisions relating to his hiring, supervision, and retention as an employee.

121.    Oorah Defendants failed to exercise reasonable care in one or more of their decisions to hire, supervise, and retain Defendant Sheinkopf and therefore exposed Plaintiff to an unreasonable risk of harm.

122.    Oorah Defendants affirmed and ratified Sheinkopf's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that Sheinkopf and/or other counselors, mentors, youth leaders, employees and/or staff at the camp would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendants.

123.     Oorah Defendants and their agents, including Rabbi Binyomin Gissinger, had superior knowledge of the likelihood that Defendant Sheinkopf would engage in unwanted sexual contact with children that she encountered in her position as a camp counselor and spiritual mentor at Defendants' camp and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

124.     At all relevant times, Oorah Defendants' acts and omissions created an environment which fostered unwanted sexual contact and exploitation against the people it had a duty to protect, including Plaintiff.

125.     At all relevant times, Oorah Defendants had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

126.     As a direct and proximate result of the negligence, gross negligence and breaches of duty of Oorah Defendants, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life, and has incurred and/or will incur costs for treatment. These injuries are permanent and ongoing in nature.

### AS FOR A FOURTH CAUSE OF ACTION FOR NEGLIGENCE/PREMISES LIABILITY AGAINST OORAH DEFENDANTS

127.     Plaintiff repeats and realleges each and every allegation set forth in all paragraphs above as if fully set forth herein.

128.     Plaintiff was a business invitee of Oorah Defendants when at times Sheinkopf engaged her in unwanted sexual contact.

129.     Oorah Defendants owed Plaintiff a duty to protect her from dangerous conditions on their premises that they knew about, or in the exercise of reasonable care could have discovered.

21

130.     Oorah Defendants owed Plaintiff a duty to provide a reasonably safe environment where she would be free from the threat of unwanted sexual contact while on Defendants' premises.

131.     Oorah Defendants owed Plaintiff a duty to take reasonable precautions to ensure her safety while on the premises of Defendants.

132.     Prior to the sexual misconduct perpetrated by Defendant Sheinkopf upon Plaintiff, Oorah Defendants knew, or in the exercise of reasonable care, should have known, of the general problem of camp counselors, mentors, youth leaders, and other persons employed in a position of authority over children engaging in sexual misconduct with children under their authority and/or in their care.

133.     Prior to the sexual misconduct perpetrated by Defendant Sheinkopf upon Plaintiff, Oorah Defendants knew, or in the exercise of reasonable care, should have known, that Defendant Sheinkopf was unfit for the duties assigned to her, that she did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

134.     Oorah Defendants breached the duty owed to Plaintiff by failing to make the premises reasonably safe for Plaintiff despite what they knew or should have known about the existence of a potential threat of harm to Plaintiff on their premises.

135.     Oorah Defendants breached the duty they owed to Plaintiff by failing to warn Plaintiff of the dangers and risks involved in attending The Zone camp and participating in programs at the camp given their superior knowledge of the potential risk of sexual harm to Plaintiff.

22

136. At all relevant times, Oorah Defendants had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

137. As a direct and proximate result of the negligence, gross negligence, and breaches of duty of Oorah Defendants, Plaintiff suffered damages, including but not limited to severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life, and has incurred and/or will incur costs for treatment in the future. These injuries are permanent and ongoing in nature.

### AS FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT GITTIE SHEINKOPF
### SEXUAL ABUSE/BATTERY

138. Plaintiff repeats and realleges each and every allegation set forth in all paragraphs above as if fully set forth herein.

139. During the years 2010 to 2011, on multiple separate occasions, Defendant Sheinkopf intentionally made contact with the Plaintiff's body, touching the Plaintiff's genitals and penetrating Plaintiff's vagina in an effort to derive sexual gratification from the contact.

140. Defendant Sheinkopf's touching of Plaintiff was offensive and unwanted.

141. Defendant Sheinkopf's touching of Plaintiff occurred while Plaintiff was a minor.

142. As a direct and proximate result of Defendant Sheinkopf' offensive and unwanted sexual touching, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

143. As a direct and proximate result of Defendant Sheinkopf's offensive and unwanted

23

sexual touching, Plaintiff was injured and damaged; said injuries and damages include, but are not limited to, physical injury, emotional distress, loss of enjoyment of life, loss of ability to engage in gainful activity, loss of income and loss of ability to perform her normal daily activities and to obtain the full enjoyment of life.

144.    As a direct and proximate result of Defendant Sheinkopf's offensive and unwanted sexual touching, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**WHEREFORE**, Plaintiff demands judgment on the causes of action stated above against Defendant Oorah, Inc, Defendant Oorah Catskill Retreat LLC and Defendant Gittie Sheinkopf for a sum in excess of the jurisdictional limits of all lower courts that will compensate her for all damages alleged herein, together with the costs and disbursements and other expenses necessary in this action.

Dated: August 5, 2020
New York, NY

Respectfully submitted,
JAMES, VERNON & WEEKS, P.A.

By: _____
Leander L. James, ljames@jvwlaw.net
Craig K. Vernon, cvernon@jvwlaw.net
1626 Lincoln Way
Coeur d'Alene, ID 83814
(208) 667-0683

Patrick Noaker, patrick@noakerlaw.com
Noaker Law Firm, LLC
1600 Utica Ave. S, 9th Fl.
St. Louis Park, MN 55416
(612) 349-2735

Stephan H. Peskin, peskin@tolmagepeskinlaw.com
Tolmage Peskin Harris & Falick
20 Vesey Street
New York, NY 10007
(212) 964-1390

24

## VERIFICATION

STATE OF NEW YORK    )
                         )
COUNTY OF KINGS    ) ss:

       Dorina Sokolovsky being duly sworn, deposes and says: I am the plaintiff in this action, I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof; the same is true to my own knowledge, except as to those matters therein to be alleged on information and belief, and as to those matters I believe them to be true.

Dorina Sokolovsky
Dorina Sokolovsky

Sworn to and sworn before me this
5ᵗʰ day of August , 2020.

By:
NOTARY PUBLIC, My commission expires: 8|16|2022

ALEX KATZ
Notary Public, State of New York
No. 01KA6226910
Qualified in Kings County
Commission Expires August 16, 2022

25