1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
DORINA SOKOLOVSKY,                  : 20-CV-04116 (DG)
                                    :
          Plaintiff,                :
                                    :
                                    :
                                    : United States Courthouse
     -against-                      : Brooklyn, New York
                                    :
                                    :
OORAH, INC., ET AL.,                : Thursday, May 27, 2021
                                    : 2:00 p.m.
          Defendant.                :
- - - - - - - - - - - - - - - X


  TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING VIA TELEPHONE
        BEFORE THE HONORABLE DIANE GUJARATI
           UNITED STATES DISTRICT JUDGE


              A P P E A R A N C E S :

For the Plaintiff:        JAMES, VERNON & WEEKS, P.A.
                            1626 Lincoln Way
                            Coeur d'Alene, Idaho 83814
                          BY: LEANDER LAUREL JAMES, IV, ESQ.

For the Defendants:       SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.
Oorah Catskills             850 Third Avenue
Retreat LLC, Oorah,         Suite 1100
Inc.,                       New York, New York 10022
                          BY: CHRISTINE SARA VARGHESE, ESQ.

                          SEGAL MCCAMBRIDGE SINGER & MAHONEY, LTD.
                            717 Third Avenue
                            Suite 2400
                            New York, New York 10017
                          BY: CARLA M. VARRIALE-BARKER, ESQ.

For the Defendants:       TWERSKY PLLC
Gittie Sheinkopf,           747 Third Avenue
Batsheva Kohn,              32nd Floor
Marvin Kohn                 New York, New York 10017
                          BY: AARON TWERSKY, ESQ.

Court Reporter:  VICTORIA A. TORRES BUTLER, CRR
225 Cadman Plaza East / Brooklyn, NY 11201
VButlerRPR@aol.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

Proceedings                                2

1          (Video teleconference call initiated.)

2          (Judge DIANE GUJARATI is on the call.)

3          THE COURTROOM DEPUTY:  Civil cause for a motion

4   hearing in Docket Number 20-CV-4116, <u>Sokolovsky versus Oorah,</u>

5   <u>Inc., et al.</u>

6          Before asking the parties to state the appearances,

7   I would like to note the following:

8          Persons granted remote access to proceedings are

9   reminded of the general prohibition of photographing,

10  recording and rebroadcasting of court proceedings.  Violation

11  of these prohibitions may result in sanctions including

12  removal of court-issued media credentials, restricted entry to

13  future hearings, denial of entry to future hearings or any

14  other sanctions deemed necessary by the court.

15          Counsel, please state your appearances for the

16  record, starting with the plaintiff.

17          MR. JAMES:  This is Leander James on behalf of the

18  plaintiffs.

19          Thank you.

20          THE COURT:  Good afternoon.

21          MS. VARGHESE:  Good afternoon.

22          This is Christine Varghese from Segal McCambridge on

23  behalf of defendants and third-party plaintiff Oorah,

24  Incorporated.

25          THE COURT:  Good afternoon.

Proceedings                                    3

1          MS. VARRIALE-BARKER:  You also have Carla

2   Varriale-Barker on behalf of Oorah, along with Ms. Varghese.

3          Thank you.

4          THE COURT:  Good afternoon.

5          MR. TWERSKY:  Hi, good afternoon.

6          Aaron Twersky of Twersky, PLLC, 747 Third Avenue,

7   New York, New York 10017 on behalf of defendants Gittie

8   Sheinkopf and third-party defendants Marvin and Batsheva Kohn.

9          THE COURT:  Okay, thank you all.

10          So, we are convened today for oral argument on, I am

11   going to call them the Oorah defendants but I am talking about

12   Oorah, Inc. and Oorah Catskills Retreat LLC, their motion to

13   dismiss without prejudice or, in the alternative, to further

14   amend.

15          I will hear the parties out on the argument now and

16   I will ask, I do not know who will argue for the Oorah

17   defendants, Ms. Varghese or one of the other people on the

18   line?

19          MS. VARRIALE-BARKER:  Ms. Varriale-Barker,

20   Your Honor.

21          THE COURT:  Okay, go ahead.

22          MS. VARRIALE-BARKER:  Sure.

23          Well, we bring this motion seeking dismissal of the

24   third-party action without prejudice.  We have outlined the

25   facts and circumstances how this motion came about and we seek

Proceedings                                             4

1    dismissal without prejudice consistent with Second Circuit

2    precedent and meeting all of the Zagano factors, and I will go

3    through each of them for the Court, but briefly there's no

4    legal prejudice, no substantial legal prejudice beyond the

5    prospect of a second lawsuit here.

6              It was promptly brought, there is no undo

7    vexatiousness on Oorah's part.  In fact, we had stipulated a

8    stipulation of dismissal before receiving Mr. Twersky's answer

9    on behalf of the third-party defendant with what we thought

10   was consistent with some things that had been discussed at the

11   last conference.

12             And we can meet all of the other factors because the

13   suit has not progressed very far at all.  There are no

14   duplicative expenses of re-litigation and the need to dismiss,

15   quite frankly, is not because we are treating this as a

16   fishing expedition; we do have some additional facts.  In

17   fact, the Court had invited us, if we wanted to, to rest on

18   our prior pleading, but we do have some additional facts.

19             However, after the pre-motion conference that we

20   had, I think it was the plaintiff's attorney who had actually

21   suggested a third alternative, which would be dismissal

22   without prejudice and, upon consultation, we thought that that

23   might be the most expeditious way to proceed.  And I think it

24   is sort of a no-harm no-foul because if the facts that we have

25   started with do not lead to sufficient information to maintain

Proceedings                                                    5

1   a third-party action, under Rule 8 we would not be able to

2   bring it.  However, we think that we do have facts that

3   appear -- that can support the cause of action as it is now,

4   which is distinguishable from the case that the Kohns rely on,

5   the Rayburn case, but we would like to further develop the

6   record.

7           And we know that the Kohns themselves have now been

8   identified as witnesses who may have information about the

9   alleged abuse.  We know that the abuse occurred, at least in

10  part, in their home.  And they are also likely, according to

11  plaintiff's Rule 26 disclosures, to have information about

12  their daughter's interaction with the plaintiff.

13          So, again, we've developed a record, but we would

14  like the opportunity to weave more strands into the record

15  that we have developed.  We meet the factors.  I don't think

16  that this is the matter of prejudice to the third-party

17  defendant because there would be no opportunity to revisit if

18  there is not substantial information or substantial facts that

19  can be alleged.  In the alternative, we do ask the opportunity

20  to, as the Court had invited us to last time, to further

21  amend, but we thought that this would be, frankly, the most

22  expeditious way to address the issues that had been framed at

23  the last conference.

24          I note that the third-party defendant doesn't even

25  address some of the Zagano factors in their opposition and

Proceedings                                                    6

1    frankly, that's because they cannot, and the most glaring one

2    is the fact that the case has really not progressed.  This

3    isn't a situation where somebody's moving for summary judgment

4    or seeking dismissal immediately prior to a full record and

5    summary judgment.  We're doing this early on without prejudice

6    for the reasons that we've explained before.  And again, given

7    the way that the last conference was when we had discussed

8    these issues, I thought that the stipulation of dismissal,

9    which wasn't objected to when it was suggested, would have

10   been the way to go, but apparently that was not the same thing

11   that third-party defendant had in mind.

12            And again, I can't emphasize enough the fact that we

13   have not done anything with discovery, and that's a whole

14   separate issue to discuss.  The case is no further along and

15   it won't be until this issue is resolved.

16            THE COURT:  Thank you.

17            Let me hear from Mr. Twersky now, please.

18            MR. TWERSKY:  Hi, good afternoon, Your Honor.  Aaron

19   Twersky on behalf of the Kohn third-party defendants.

20            I -- obviously, our view is completely contrary,

21   right, Your Honor?  I mean, our papers are pretty thorough and

22   they're chock full of case law supporting our position.  It's

23   nothing more than an attempt to avoid a decision on the

24   merits.  That's all that Oorah is trying to do.  Oorah knows

25   that.  Oorah has done that from the beginning.  This case is

Proceedings                                                7

1   not an old case, as Counsel just pointed out.  It's not at

2   all.  But from the beginning Oorah's main objective as a

3   defendant in the primary action was to bring in the Kohns.

4           They did that.  They brought the Kohns in.  I

5   reached out to Counsel and I suggested what Counsel is now

6   trying to do; to withdraw the action.  And it was a

7   matter-of-fact no.  And they knew that they were looking for

8   an insurance policy.  They now know the insurance policy has a

9   client.  So now it's a matter of what can we do to string

10  along the Kohns, keep them in this case so we can bring them

11  in; if not now, bring them back in later.

12          There's no secret, Counsel has written it more than

13  once in their papers, they anticipate doing third-party

14  non-party discovery on the Kohns just to bring them back in.

15  There is not a shred of evidence, as Your Honor knows, we've

16  been before Your Honor at least once on this exact issue.  Our

17  motion to dismiss with prejudice is completely ripe, ready to

18  go.  The Court knows that.  Counsel knows that.  So, in an

19  effort to try and avoid a decision on the merits, Oorah now

20  files this motion to dismiss without prejudice so that they

21  can try to string us along so that settlement is harder and

22  this way they keep the Kohns in.

23          The law is clear.  It's not a matter of ripe

24  dismissal without prejudice.  We cite ample case law.  It's

25  not a matter of right.  It's not meant to be used to avoid a

Proceedings                                                    8

1    decision that's adverse to a party.  It's not meant to be used

2    to avoid decision on the merits.  That's exactly what Oorah's

3    trying to do.  How do we avoid a decision with prejudice.  How

4    do we avoid an adverse decision to us.  So, let's dismiss it

5    without prejudice.  That's exactly what the case law says it's

6    not meant to do.

7            Counsel is claiming that's not what they're doing.

8    That's exactly what they're doing.  There's no secret, there's

9    no way to sugarcoat it, you can't spin it another way.  That's

10   exactly what's going on.  They asked to do discovery, that's

11   what they're going to do.  That there's no prejudice?  I don't

12   know, I mean, I can send Counsel for Oorah my Counsel fees

13   that my client has had to pay.  That's prejudice.  The case

14   law says it.  Legal fees for a case that's now going to be

15   dismissed without prejudice is prejudice.  That is substantial

16   prejudice under the law.  So saying there's no substantial

17   prejudice is just not true.  Case law says if there's

18   substantial prejudice, you can't voluntarily dismiss under

19   Rule 41(a)(2), as far as I'm aware.

20           THE COURT REPORTER:  Excuse me, Counsel, 41(a)?

21           THE COURT:  I am sorry, who is speaking?

22           THE COURT REPORTER:  I apologize, Your Honor, this

23   is Court Reporter Victoria Butler.

24           THE COURT:  You were overlapping, I could not tell

25   who was speaking.

Proceedings                                                    9

1          Mr. Twersky, are you done or do you have more to

2  say?

3          MR. TWERSKY:  No, I have more to say.

4          THE COURT:  Go ahead.

5          MR. TWERSKY:  I think the court reporter wants to

6  know Rule 41(a)(2), which is what Counsel for plaintiff is

7  moving under now.

8          THE COURT:  I am sorry, I did not realize it was the

9  court reporter.

10         Yes, please feel free to interrupt if you need any

11 clarification or if we are going too fast.  I am sorry, I did

12 not realize who was speaking.

13         THE COURT REPORTER:  Thank you.

14         MR. TWERSKY:  I apologize -- Aaron Twersky again --

15 if I'm speaking too fast for the court reporter.

16         That's our argument, Your Honor.  The case law under

17 D'Alto versus California talks about substantial prejudice.

18 This is substantial package.

19         Your Honor, as far as the Zagano factors.  Counsel

20 has mentioned it, it's clear.  It's overwhelming in this

21 District as well as in the Second Circuit, the five factors.

22 The five factors weigh heavily in favor of denying Oorah's

23 motion to dismiss without prejudice.

24         The first one is diligence in bringing the motion to

25 dismiss without prejudice.  There's no secret here.  We sent

VB      OCR      CRR

Proceedings                                      10

1   an email, we had a conference by phone with Counsel for Oorah

2   three quarters of a year ago, a month after we were brought

3   in, from the outset.  They knew from the outset they had not a

4   shred connecting us.  They have made us, from the outset and

5   we've attached, Your Honor, we've cited it in our memo, we

6   laid out clearly under all the law, contribution and

7   notification for a third-party defendant, you can't survive a

8   motion to dismiss.  Withdraw the action.  We even agreed to a

9   tolling agreement.  They would not hear of it.  They wanted

10  that insurance policy from Allstate, which was denied in the

11  end but they wanted it in.  And we begged them and they

12  refused.

13          And now we've held their hand to the fire.  We've

14  pushed them to the wall.  And the Court did it, Your Honor;

15  not me, Your Honor did it.  We filed a pre-motion letter to

16  dismiss with prejudice, and they amended, and then the Court

17  gave them a second chance to amend.  Now Counsel's saying,

18  well, they just thought this would be more convenient.  That's

19  not what happened.  They waited until the very last second and

20  they didn't file the motion to amend and then, we're now

21  finding ourselves where now they're claiming they want to

22  amend.

23          Frankly, Your Honor, I almost encourage the Court to

24  not grant the motion to dismiss without prejudice and allow

25  them to amend.  What are they going to do in this magical

Proceedings                                                    11

1   second amendment that they already waived in there last time?

2   Nothing.  They have nothing that they want to bring in.  They

3   can't allege anything.  Why?  Because there is nothing.  There

4   was no notice under the law.  We should be dismissed with

5   prejudice.

6          Frankly, the plaintiff has admitted it already.  We

7   cited it in our post papers all over the internet where there

8   was a video of the plaintiff saying that we had no notice and

9   they are innocent, the Kohns knew nothing about anything in

10  their allegations.  So now plaintiff is going to magically --

11  now plaintiff says they're going to add facts.  What facts?

12  What facts do they have?  Plaintiff has -- she herself has

13  said that my clients are innocent.

14         So, going back to the Zagano factors, Your Honor.

15  Was this done with diligence?  Of course it was not done with

16  diligence.  This should have been done already a year ago,

17  almost a year ago when this was first filed.  And it hasn't.

18  We've done pre-motion letters, we've been in front of

19  Your Honor, we've had conferences, we had to file an

20  opposition.  What's diligent about that?  My client spent tens

21  of thousands of dollars.  That's not diligence.  The case law

22  says that's not diligence and because of that, Your Honor, the

23  Zagano factor is in favor of them not being allowed to file --

24  the first factors not -- will not allow them to file.

25         The same thing, Your Honor, for the second factor.

Proceedings                                          12

1   The second factor relating to vexatiousness.  It's

2   overwhelmingly clear this is vexatious.  All they're doing is

3   avoiding an adverse decision.

4          Adverse decision avoidance is not ample support to

5   file the motion to dismiss without prejudice.  They filed

6   their own motion to dismiss in order to avoid the merits-based

7   decision.  That's all this is.  Case law says it very clear.

8   Exactly like Your Honor, we cited a case called Heyliger v.

9   Cymbrak.  Waiting to seek a dismissal until after it became

10  clear that the claims have no merit is considered vexatious.

11  That's what this is.  This is vexatious litigation just trying

12  to bring in a party that has no connection so that it makes it

13  more -- it makes easier for them to settle when they know

14  there's no claim.  So, it's vexatious, it wasn't done with

15  diligence, and that factor as well weighs in favor of them not

16  being allowed to file it.

17         Your Honor, we ask that that be held -- that if

18  somehow they be allowed to file it, that there be some sort of

19  Protective Order not to allow for third-party non-party

20  discovery against the Kohns.  There's no reason at all why

21  there should be any discovery relating to the Kohns if the

22  matter continues.  This matter is by plaintiff against the

23  defendants.  Plaintiff doesn't need discovery relating to

24  whether the Kohns knew.  They don't bring a claim and they've

25  already admitted, they have direct admission, that they knew

Proceedings                                          13

1   nothing about it.

2          And so the factors, the primary two first factors

3   including the fifth factor, their explanations for the

4   dismissal is -- all they say is a dismissal without prejudice

5   is reasonable.  Why is it reasonable?  It's reasonable for

6   them.  It's not reasonable for my client.  My client's already

7   been in this matter for a year paying extensive legal fees for

8   no reason and now they have to deal with, potentially, the

9   declaratory judgment action against their insurance company.

10         And so, Your Honor, we ask that their motion be

11  denied and we be allowed to move to dismiss with prejudice.

12  But, we note in our second point in our memo letter that if

13  the Court somehow grants the Kohns' release, the Oorah's

14  release to dismiss without prejudice, that we be entitled to

15  attorneys fees and legal fees.  We cite case law after case

16  law that attorneys fees incurred in defending an action like

17  this is reasonable, right.  The rules say it.  FRP says it.

18  The Courts have said the Court may dismiss it without

19  prejudice on the terms that the Court considers proper and

20  ample case law says legal fees for up to this point is not

21  unreasonable.

22         And so, we ask Your Honor for that as well.  Because

23  if -- we cite a case called Colombrito v. Kelly.  The case

24  there says the purpose of such award is generally to reimburse

25  the defendant for the litigation costs incurred in view of the

Proceedings                                    14

1   risk faced by the defendants that the same suit will be

2   refiled and will pose duplicative expenses upon it.

3           Somehow, if Your Honor thinks it's appropriate it

4   should be dismissed without prejudice, well then attorneys

5   fees is for sure ample.  Oorah has admitted they plan on doing

6   nonparty discovery against the Kohns.  It's not a secret.

7   They've said it.  They've asked for it.  Well then, all

8   they're doing that for is to bring -- re-file their complaint,

9   third-party complaint.  Well then, we ask for attorneys fees

10  up to this point.  Not unreasonable.  We also ask, Your Honor,

11  we'd also ask for a Protective Order that we mentioned.  And

12  other than that, Your Honor, I think that we rest on our

13  papers.  I think our papers are pretty clear.

14          THE COURT:  Thank you, Mr. Twersky.

15          Let me turn back to Ms. Varriale-Barker for any

16  response.

17          MS. VARRIALE-BARKER:  Yes, Your Honor.

18          I have a lot to respond to, but let me try to keep

19  it circumspect.

20          With regard to this business about bringing in or

21  not being able to do any non-party discovery with the Kohns, I

22  think that Mr. Twersky overlooks the fact, and we've annexed

23  it to our papers, that the plaintiff has identified the Kohns

24  as Rule 26 witnesses indicating that some of the abuse

25  happened in the home and that they may have witnessed -- and

1   it's beyond the abuse.  The interactions between their

2   daughter and the plaintiff.  So, that's not coming from me,

3   although it is a basis to conduct non-party discovery and why

4   it's not exactly correct to say that there is no evidence that

5   the Kohns were aware of or have information relating to the

6   alleged abuse or the interactions between their daughter, who

7   the plaintiff has described as a sexual predator, and the

8   plaintiff.

9           The video that the plaintiff -- we had alluded to

10  this in our last conference with the Court.  There is a video

11  where the plaintiff says, and this is would be the subject to

12  the amendment, that she is to come downstairs -- meaning

13  Mrs. Kohn -- and check up on them, and check on them in the

14  middle of the night, and that the plaintiff had wished that

15  they would catch us because that was her only way out.  They

16  had pushed the beds together.  We know from plaintiff's most

17  recent discovery that there were episodes or at least one

18  episode where the plaintiff was bleeding at the Kohns' house.

19  We know that they were using personal email, not camp email,

20  to communicate.

21          I mean, there is enough there.  This isn't something

22  like an open-and-shut case that the Kohns had nothing to do

23  with this.  There is enough there and it is distinguishable

24  from the cases that have been cited by the Kohns that it

25  merits the discovery that we're talking about.

```
                            Proceedings                       16
```

 1          In terms of duplicative or unnecessary litigation

 2    again, we have had the barest of discovery.  The plaintiff and

 3    Oorah have provided more fulsome Rule 26.  We have just an

 4    insurance policy from the Kohns and Ms. Sheinkopf, which is a

 5    separate issue, but thousands and thousands of dollars in

 6    legal fees would surprise me and are not supported in the

 7    papers.  And the Second Circuit had consistently recognized

 8    that starting a litigation over again doesn't constitute legal

 9    prejudice and here, we're barely out of the gate to start off

10    with.

11          I have a different recollection of the conversations

12    that Mr. Twersky has alluded to and I don't think that his

13    version makes much sense when you think about the fact that we

14    had talked about dismissal without prejudice at the pre-motion

15    hearing as one of the options, the second being further

16    amendment versus resting on one's pleadings.  Nobody objected.

17    We sent the stipulation and in response we got:  I'm not in

18    the office.  And then, an answer within moments.  And we've

19    laid that out in our papers.  I think it's incredibly off-base

20    to claim that we are somehow being vexatious and, at the same

21    time, seek costs and sanctions as -- or attorneys fees as a

22    result of the same, given the behavior that we've

23    demonstrated.

24          We can meet the Zagano factors.  The Kohns don't

25    even bother to address several of them because they're not in

Proceedings                                    17

1    their favor, quite frankly.  I think that the situation is

2    such that dismissal without prejudice at this stage of the

3    litigation makes sense, protects everyone's interests and

4    again, there's no harm to the Kohns if there really aren't

5    further additional facts.

6              THE COURT:  Thank you.

7              MS. VARRIALE-BARKER:  But I think that there will

8    be.

9              THE COURT:  Thank you, that is helpful.

10             I want to go back to something that you had said

11   earlier when you first addressed the Court about the status of

12   discovery.

13             MS. VARRIALE-BARKER:  Yes.

14             THE COURT:  Could you just confirm for me that there

15   have been no depositions yet in this matter.

16             MS. VARRIALE-BARKER:  Oh, not at all.  Not of

17   anyone.  We're still seeking discovery.

18             THE COURT:  So, at this point there has been the

19   exchange of the initial disclosures.

20             Anything else?

21             MR. TWERSKY:  No.  We are trying to get

22   authorizations, which is a separate issue.  We have been told

23   that we need to execute a confidentiality agreement, which we

24   have done.  However, neither Ms. Sheinkopf, nor the

25   third-party defendant, was willing to execute the agreement

Proceedings                                                    18

1    until after this motion was decided.  So, I don't even have

2    authorizations at this point.

3              THE COURT:  I am going to turn to you, Mr. Twersky,

4    because I would like to ask the same question to confirm that

5    there have be no depositions and that we are at the stage of

6    initial disclosures only.

7              Has anything else happened on the discovery side of

8    this as far as you are aware?

9              MR. TWERSKY:  No, Your Honor, as far as I'm aware

10   the discovery -- there was just an exchange of initial

11   disclosures.

12             Counsel just noted there was an exchange of a draft

13   of a confidentiality agreement.  I haven't had a chance to

14   review it.  One of my associates is on maternity leave earlier

15   than expected so I'm a little short-staffed and just brought

16   in a new associate to join me on this case.  So, we

17   anticipated that I would review it and then we'd go from

18   there.  That's just relating to discovery.  There's been no

19   depositions and in terms of discovery, it's early on in the

20   case.

21             If I may, Your Honor, just to reply quickly to some

22   of --

23             THE COURT:  I would like to ask you a couple of

24   questions first and then I will give you a chance to reply.

25             MR. TWERSKY:  Sure.

Proceedings                                        19

1          THE COURT:  You heard your adversary discuss that

2    the Kohns were first invoked or involved in this case when

3    plaintiff listed them as witnesses in her initial disclosure.

4          Is that accurate?

5          MR. TWERSKY:  I don't think that's accurate at all,

6    Your Honor, actually.  That's completely not accurate.  The

7    way this worked was, this case was filed -- and I can look up

8    the exact dates, I don't have it in front of me, but -- soon

9    thereafter was removed.  I think it was even, and

10   Ms. Varriale-Barker can comment on this and I may be

11   misquoting it, but not intentionally -- this was filed in

12   State Court and then removed to Federal Court by Oorah.  And I

13   believe even prior to it being removed to Federal Court, my

14   clients were brought in as third-party defendants -- oh, so

15   then it was right afterwards.  It was soon after removal to

16   Federal Court that the third-party complaint as filed.

17          There's no misquoting, you know, what's on paper.  I

18   have an email that I attached and I've cited it in our memo.

19   It says very clearly I reached out to Counsel for Oorah to not

20   have to go through a year of litigation like this for nothing.

21   And no one was willing to withdraw it.  We were willing to

22   withdraw without prejudice and enter a tolling agreement

23   because this relates to the Child Victims Act and they

24   understood there was a statute of limitations.  Oorah was not

25   interested.  They would not hear of it.  And so then we played

Proceedings                                        20

1    this out.

2              So, back to answer Your Honor's question, that's not

3    at all what happened.  Later on, more recently, after initial

4    disclosures, in a very boilerplate initial disclosure by

5    plaintiff, even though plaintiff has already admitted publicly

6    that, and I quote, that they are innocent people, referring to

7    my clients the Kohns, a list of potential witnesses, not one

8    of them are the Kohns.  Not that they think actually there is

9    something there.  Counsel is using that to hang their whole

10   hat on to claim that obviously there is something there, even

11   though that is the first time I've ever heard that ever.

12             I would ask, frankly, ask the plaintiffs directly on

13   this call.  Do they actually believe that there's something

14   there?  I don't think so.  I think that's probably just a list

15   of twenty potential witnesses, like everyone always done in

16   initial disclosures, anyone that's potential, of course,

17   potentially anyone is there.  But that wasn't the first time

18   that my clients came into this case, they were brought in well

19   before those initial disclosures happened.

20             THE COURT:  Let me turn back to Ms. Varriale-Barker

21   on this specific point because I do want to make sure that the

22   timing is clear.

23             MS. VARRIALE-BARKER:  Yes.

24             And the timing of what aspect; when the third-party

25   action was started?

Proceedings                                        21

1          THE COURT:  Not when the third-party action was

2    started necessarily, but when were the Kohns first either

3    mentioned in any of the documents, any of the discovery

4    proceedings.  When were they first, essentially, invoked as

5    potential witnesses?

6          MS. VARRIALE-BARKER:  She mentions them in some of

7    her social media posts that we reviewed as part of our initial

8    investigation.  The confirmation or the solidification really

9    came from the investigation and then, from plaintiff's

10   Rule 26.  And I want to emphasize that, as I understand

11   plaintiff's pleading, it's the sexual abuse, but also that

12   there was a, an -- how to best describe it -- an abusive or

13   obsessive, inappropriate relationship between Ms. Kohn and the

14   plaintiff.  And I think that is what is mentioned in the

15   Rule 26; that they may have knowledge about the nature of that

16   relationship.

17          And it's similar to the claims, quite frankly, that

18   have been made about Oorah personnel; that they were on notice

19   or should have observed the very same behavior.

20          THE COURT:  Which came first in time, the

21   third-party complaint or plaintiff's Rule 26 disclosure in

22   which the Kohns were mentioned?

23          MR. TWERSKY:  Third-party complaint.  Well in

24   advance of that, Your Honor.

25          MS. VARRIALE-BARKER:  I don't know that.  I don't

                    VB        OCR        CRR

Proceedings                                22

1   know about well in advance, but yes.

2            THE COURT:  Ms. Varriale-Barker, just go ahead.

3            MS. VARRIALE-BARKER:  I think that Aaron actually

4   has it up, the initial third-party action, the date that it

5   was filed predates the Rule 26, of course.

6            MR. TWERSKY:  The Rule 26, Your Honor -- Aaron

7   Twersky.

8            The Rule 26, I think, was filed February 21st --

9   24th, 2021.  I mean, the amended complaint was filed after

10  that, but the first complaint was filed several months --

11  right after the initial complaint was filed.

12           THE COURT:  Yes, thank you.  I just wanted to make

13  sure that the timing was clear to all here.

14           Mr. Twersky, you have raised in your papers the

15  suggestion that the Oorah defendants are going to be abusing

16  the discovery process to engage in what you are calling a

17  fishing expedition.

18           What is your basis for claiming that?  Is there any

19  anything that has already occurred in this case that leads you

20  to conclude that?

21           MR. TWERSKY:  They wrote it in their papers that

22  they anticipate doing discovery on my clients.  They're not

23  denying it now.  Ms. Varriale-Barker is not going to deny that

24  now.  She knows she --

25           THE COURT:  Let me stop you there for a moment.

Proceedings                                    23

1        What you are claiming is that it is going to be a

2    fishing expedition, which is a very different nature than

3    simple discovery; is that right?

4        MR. TWERSKY:  Your Honor, a fishing expedition in

5    the sense that there has been a direct admission by plaintiff

6    that my clients didn't know anything about it.  They have not

7    been included in plaintiff's initial complaint.  We have moved

8    to dismiss with prejudice and they took no position and had no

9    issue with it.  And now, plaintiff's -- third-party Oorah's

10   now trying to do it without prejudice and have admitted that

11   they anticipate doing discovery to, quote, develop the record.

12        So, when you develop a record that there is none of,

13   and you've spent a lot of legal fees to do that on behalf of

14   the Kohns I'm referring to, Your Honor, so the fishing

15   expedition would be taking depositions.  We've all been at

16   depositions, Your Honor, where if you would, you know, extract

17   from one sentence, you can try to weave a tale that doesn't

18   exist.  Plaintiff has made a direct admission they knew

19   nothing about it.

20        Ms. Varriale-Barker keeps quoting the same thing

21   over.  She did it last conference, she's doing it now

22   repeatedly about how they wish the mother came down -- wishing

23   does not give notice.  The plaintiff directly said, I quote it

24   in our papers, she literally said outright.  She said they are

25   innocent people.  They are lovely people.  I have quoted.  I

Proceedings                                    24

1   can quote it for you now, Your Honor.  So, to now create a

2   fact pattern that doesn't exist is going to be going on a

3   fishing expedition.  Trying to depose people that are not

4   relevant.

5            THE COURT:  Thank you, Mr. Twersky.

6            Let me turn now, I know Mr. James, this was not your

7   motion, but I do have a question for Mr. James.

8            Are you still on the line?

9            MR. JAMES:  I am, Your Honor, and I do have, I

10  think, what may be some important points to make.

11           THE COURT:  Okay.

12           Let me just ask you one question and then you can

13  make whichever points you want to bring to my attention about

14  the status of discovery, what has taken place and what hasn't

15  taken place.

16           Could you let me know?

17           MR. JAMES:  Prior to filing suit, plaintiff provided

18  a, essentially, almost a Rule 26 disclosure, which provided a

19  great deal of information to Oorah defendants.  Then we ended

20  up filing suit and then engaged in our Rule 26 disclosures.

21           The discovery has been roadblocked, I think, by this

22  issue before the Court and if the Court would like, and I

23  would like to expound a little bit on that.

24           THE COURT:  Sure.

25           MR. JAMES:  Okay.

VB        OCR        CRR

Proceedings                                         25

1           The problem here, in the context of this motion to

2     amend and motion to dismiss the third-party complaint, in one

3     of the filings defendant Oorah uploaded a great deal of

4     confidential and, I would argue, privileged information of my

5     client's medical records and sensitive information into the

6     docket.  I immediately alerted Oorah's Counsel to that issue

7     and I believe within, you know, an hour or so those records

8     were pulled off the -- pulled out of the file.  The Court

9     file.

10          Because of that, my client is very sensitive to

11    being sure we have a confidentiality agreement that prevents

12    that sort of thing from occurring again.  I thought we already

13    had one, but just to be sure, I'm trying to get one in

14    writing.  I have exchanged a number of drafts with Oorah's

15    Counsel and we have both signed it and the co-counsel has not

16    signed it.  And I'm not casting any stones here, I truly am

17    not.  I understand the position they're taking that they don't

18    want to sign that and get into discovery when the Kohns will

19    be, they believe, dismissed.  So, that has been part of the

20    roadblock in discovery.  We need to get that agreement signed

21    so that we can start exchanging the sensitive material.

22          I know Oorah has sensitive material, too.

23    Confidential material.  I shouldn't say I know, I highly

24    suspect they do.  So, we need to get that signed so we can get

25    discovery going.  And that, I think, is leaving some prejudice

1   that I will explain in my argument here in a minute to

2   plaintiff and all parties.

3             THE COURT:  Thank you, that is helpful, go ahead.

4             MR. JAMES:  Okay.

5             Your Honor, let me start with a solution to the

6   problem.  I think there are two solutions to the problem in

7   front of the Court and I think the Court, on the record, has

8   the power to exercise either one.

9             The first is what the Kohn defendants are requesting

10  and that would be dismissal of the cross-claim with prejudice.

11            The second is to allow Oorah defendants to amend

12  their complaint, third-party complaint again, and then hear

13  another motion to dismiss on that, and make a ruling on that.

14  And there's a timing issue.  And I want to invite the Court to

15  focus on this timing issue.

16            There is a growing prejudice now for the plaintiff.

17  The growing prejudice is driven by the deadline of the window

18  for the Child Sexual Abuse Act.  I am very familiar with that

19  act, I helped draft it, in fact, and actually assist in that.

20  The deadline is August 13th, effectively.  There's reference

21  to the 14th, but it's really August 13th, I think at midnight,

22  is the deadline for my client to amend the complaint if she's

23  going to, to bring in the Kohns.

24            Plaintiff has been sitting on the sideline

25  throughout this argument between the Oorah and the Kohns

1   trying to see where the Court lands on this.  If the Court

2   dismisses the third-party complaint with prejudice, then

3   plaintiff can proceed forward without the concern that later

4   on they will be brought back into the case and particularly,

5   if it's after the window closes, then the plaintiff can't

6   bring a claim against the Kohns, and there is an empty-chair

7   trial where fault will be dumped on the empty chair and my

8   client, the plaintiff, receives no recovery for that fault.

9           The prejudice I am trying to highlight is if this

10  issue is not resolved one way or the other in advance of

11  August 13th such that the plaintiff can't exercise her right

12  to bring a claim against the Kohns if the Court decides the

13  facts of law sustain a claim, then my client will be

14  materially prejudiced.  My client -- and I think all parties,

15  honestly -- are being materially prejudiced at this point with

16  discovery because we're not able to get the written discovery

17  we need and disclosures we need arguably to get into

18  depositions.

19          I think if I -- I will tell the Court I have not

20  asked for a deposition, but I think if I asked Mr. Twersky for

21  the deposition of his clients, I think I might run into

22  reluctance.  I don't want to speak for him, but I think his

23  position has been pretty clear that he wants this issue

24  resolved before expense, time, energy and his clients' money

25  engaging in discovery.

1          So, to crystallize my argument.  The plaintiff and I

2   would argue all parties are being prejudiced by the delay in

3   discovery that's been caused by this issue still percolating,

4   the issue being whether the cross-claim will be sustained or

5   not or dismissed with prejudice.  The prejudice to my client

6   that's growing daily is the looming deadline of August 13th

7   where if the Kohns are in the case -- and I have been candid

8   with Counsel on this, I have told them, I intend to bring a

9   claim against the Kohns if the Court decides there is

10  sufficient evidence to sustain a claim.  I have to, because I

11  have to protect my client from the empty chair at trial.  I

12  can't let the 13th pass without making decision on that.  So,

13  the second solution of allowing Oorah to amend and then

14  hearing another motion to dismiss, the Court, I think, has the

15  power to exercise.

16          I would urge the Court to put time limits on that,

17  if the Court goes that direction, such that that motion is

18  heard well in advance of August 15th of this year so I know

19  whether or not I need to protect my client by bringing a claim

20  against the Kohns.  If they're out, they're out with prejudice

21  for everybody, then fine.  They're out with prejudice for

22  everybody, I don't have to worry about that.  But if they're

23  in, then I've got to worry about that.

24          And if they're in, there's also another sort of, I

25  think, if I understand my procedure right here and where

1  people live and reside, there's another looming issue because

2  if I amend to bring in the Kohns as co-defendants, then that

3  destroys diversity and this case goes back to State Court, I

4  think.  But that's another issue for another day.

5          So, in summary, Your Honor, I would ask that the

6  Court either dismiss with prejudice so that we know the Kohns

7  are out, they're out for good, I don't have to worry about

8  that for my client.  Or, if the Court decides the more prudent

9  approach is to allow an amendment with Mr. Twersky surely

10  going to bring another motion to dismiss, then -- I should

11  have pointed this out, Your Honor, I wrote this down --

12  Oorah's Counsel said:  We do have the facts to support the

13  cause of action now.

14          They have the facts to support it now, so if the

15  Court allows them to amend, they will bring those facts into

16  the claim, the cross-claim, and then, it should be heard well

17  in advance of the 13th so that we know whether the Kohns are

18  in this case or out with prejudice, but which will dictate

19  what action I take.  Or don't take.

20          And with that, I will answer any of the Court's

21  questions.

22          THE COURT:  Thank you, that is helpful, thank you

23  Mr. James.

24          I do not have any more questions.  I appreciate the

25  arguments of all the parties and the briefing as well and I

Proceedings                          30

1   will reserve decision on the Oorah defendants' motion.

2           MR. TWERSKY:  Your Honor, if I may, it's Aaron

3   Twersky.

4           THE COURT:  Yes, Mr. Twersky.

5           MR. TWERSKY:  Just briefly, if I may, just to speak

6   to Mr. James' point right now.  Just to buttress his point.

7           I understand his prejudice argument and we've -- I'm

8   not going to say we consent, but we'd be more than happy,

9   Your Honor, if the Court denies the first element, the first

10  prong of their motion and grants the Oorah defendants like

11  Mr. James just said, the Oorah Counsel has said repeatedly

12  they have facts, they have facts, they have facts.  So if they

13  have facts, let them have a third chance to amend and we will

14  follow Your Honor's court rules.  We'll file a pre-motion

15  letter, if we think it's appropriate and we'll go from there.

16          THE COURT:  Right.  I think you said this earlier

17  and I have your position.  Thank you, Mr. Twersky, I

18  understand your position well.

19          I will reserve decision and the decision will issue

20  in due course.

21          Thank you, everyone, we are adjourned.

22          ALL:  Thank you, Your Honor.

23          (Matter concluded.)

24

25                          oooOooo

VB     OCR     CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*
/s/ Victoria A. Torres Butler  June 4, 2021