

JAMES, VERNON & WEEKS, PA
*Helping people solve problems®*

**LEANDER L. JAMES**
**CRAIG K. VERNON**
1626 LINCOLN WAY
COEUR D'ALENE, ID 83814
Toll Free Telephone: (888)-667-0683
Office Telephone: (208) 667-0683
ljames@jvwlaw.net
cvernon@jvwlaw.net

TOLMAGE, PESKIN, HARRIS, FALICK
**STEPHAN H. PESKIN**
**MATTHEW C. LOMBARDI**
20 VESEY STREET
NEW YORK, NY 10007
Toll Free Telephone: (877) 298-3201
Office Telephone: (212) 964-1390
peskin@tolmagepeskinlaw.com
lombardi@tomagepeskinlaw.com

September 22, 2023

Hon. Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 13B-South
Brooklyn, New York 11201

    Re:  Sokolovsky v. Oorah, Inc. et al.
          Case No. 1:20-cv-04116

Dear Honorable Judge Pollak:

      Plaintiff files this response to the pre-motion letter of Counsel for Defendant Gittie Sheinkopf, dated September 15, 2023, Dkt. 92.

**1. Offer to meet and confer regarding Defendant's factual inaccuracies and resolution.**

      Plaintiff offered to meet and confer regarding Defendant's factual inaccuracies in an attempt to reach resolution of this matter without hearing. Defendant's inaccuracies include the incorrect statements that Plaintiff produced no documents when she produced 402 pages of documents to Defendant, that Plaintiff made no search pursuant to the Court Order when she did, and Defendant's incorrect reading of Plaintiff's Affidavit. See *infra*. As part of the meet and confer, Plaintiff proposed the parties "work out reasonable terms for your vendor to search data in Plaintiff's possession," in reference to the parties' agreement that Defendant would engage a vendor at her expense to search Plaintiff's data. Exhibit A submitted herewith is a true and correct copy of an email string containing said attempt.

**2. Defendant wrongly claims Plaintiff did not produce documents or file an affidavit complying with the Court's Order when she produced 402 pages of documents and filed a compliant Affidavit.**

      Respectfully, Defendant Sheinkopf's Motions are based upon incorrect facts. Defendant asserts, "Plaintiff did not produce documents nor did she provide an affidavit stating no documents

could be located after a reasonable search." (Dkt. 92, pg. 1). On the contrary, Plaintiff did both. On September 8, 2023, Plaintiff (through counsel) filed and served Defendants through Pacer with the Affidavit of Leah Sokolovsky with exhibits (Dkt. 91 and 91-1 through 91-4) and served Defendants (via an emailed share file through OneDrive) with Bates Nos 000823 – 001265, constituting 402 additional pages of documents containing communications that she was able to retrieve from an exhaustive extraction and search of the data that was available to her, through the assistance of counsel. In addition to these documents, Plaintiff produced an index to Defendants to facilitate their search of the production.

True and correct copies of the OneDrive e-mail confirmations are attached hereto as Exhibits B and C. Plaintiff's Counsels' office received no notifications of non-delivery errors from Sheinkopf's Counsel's office, indicating Sheinkopf's Counsel received the document production.

Submitted herewith as Exhibit D is a true and correct copy of an email from Oorah Defendants' paralegal responding to Plaintiff's production telling Plaintiff's paralegal, "Thanks Lucia—DS," evidencing Oorah Defendants received the production (which is likely why they did not join in Defendant Sheinkopf's erroneous motions).

Yet further, in an abundance of caution, on September 8, 2023, because of recent system errors with Pacer and ECF, Plaintiff's Counsels' office separately e-mailed a copy of Plaintiff's Affidavit and exhibits to Defendants (Exhibit A, page 4 - email of September 8, 2023.)

Defendant Sheinkopf's misstatement of facts as a basis to vacate Plaintiff's continued deposition and in support of Defendant's Motions is mystifying given Defendant's Counsel need only read his emails and look at the docket to see Plaintiff complied with the Court's Order.

### 3. Plaintiff more than Complied with the Court's Order.

The Court's Order provided in pertinent part:

". . . plaintiff is ordered to produce all documents and communications regarding plaintiff's relevant conversations with the individuals identified in defendant Sheinkopf's letter. In the event that plaintiff cannot identify any such documents or communications, plaintiff shall file an affidavit with this Court verifying the absence of any responsive documents and detailing her search efforts. Plaintiff shall comply with this Order no later than **September 8, 2023**.

Dkt. 86.[1]

---

[1] The individuals identified in Sheinkopf's letter were: Victoria Summers, Jacqueline Cohen, Dina Bender, Menucha Leib, Vared Zino, Elliot Spiro, Shimrit Adar, Rebecca Sina, Alexandra Sokolovsky, Marilyn Sokolovsky, Brach Davidowitz, Dina Levy, Yiddesel Braun, Elliott Spiro, Leah Forester, Suri Meisner, Shimrit Adar, Rivky Gross and Tamar.

Plaintiff was to either produce documents of communications *or* file her affidavit ("In the event that plaintiff cannot identify any such documents or communications," which she did). Plaintiff did both, more than complying with the Order.

After a search for possible documents falling within the scope of the Order, Plaintiff, with the assistance of counsel, using available resources and data extraction, located Bates Nos. 000823 – 001265, constituting 402 additional pages of documents. These documents contain communications falling within the scope of the Court's Order and other documents Plaintiff determined may be discoverable. Plaintiff then timely produced all 402 pages of documents to Defendant Sheinkopf in a share file through OneDrive.

In addition to producing the additional communications, and as can be plainly seen in the record at Dkt. 91 and 91-1 through 91-4, Plaintiff served Defendant with her Affidavit and separately emailed it with exhibits to Defendant.

4. **In addition to complying with the letter of the Court's Order, Plaintiff complied with the spirit of the Order by reaching an agreement with Defendant Sheinkopf's Counsel giving Defendant access to all of Plaintiff's data using an independent vendor.**

In further compliance with the spirit of the Court's Order, on August 31, 2023, Plaintiff emailed Defendant Sheinkopf the following proposal:

1. Defendants engage an independent e-discovery provider, at their expense, to perform the requested ESI data collection on Plaintiff's accounts and devices for relevant data under terms that protect plaintiff and other third parties from disclosure of non-relevant information;
2. Plaintiff will then cooperate with the independent e-discovery provider to provide access to her information, including providing her passwords, data exports and other related permissions to access the underlying relevant native data;
3. The e-discovery provider would then perform a managed review of the collected data to determine what data is relevant and produce any relevant data in the specific load file and tiff images formats requested by Defendants to all parties.

Common providers of these services (performing the type of extensive e-discovery Defendants have requested) include Relativity (https://www.relativity.com/data-solutions/ediscovery/), Nextpoint (https://www.nextpoint.com/ediscovery-services/), and Epiq (https://www.epiqglobal.com/en-us/services/ediscovery-litigation-investigation-services/ediscovery-services).

Exhibit E, a true and correct copy of which is filed herewith.

On September 5, 2023, Defendant Sheinkopf's Counsel accepted Plaintiff's proposal, stating:

> Hi Lucia[2],
>
> In response to your e-vendor letter, the defendants have initially agreed to engage a vendor that will cull the responsive documents, as you suggested.
> The vendor we have used in the past is Precision Legal Services - https://www.plsdata.com/.
>
> > **Ediscovery | Precision Legal Services | United States**
> > Are you nervous that a big firm will steam roll you with E-discovery? PLS will make you the most dangerous litigator in the room. Precision Legal Services is a premier ediscovery providor for small and medium sized law firms
> > www.plsdata.com
>
> Please confirm this is acceptable to you and we'll follow up with next steps.
> They will search the necessary email addresses and social media accounts, etc, for responsive documents based on assorted keywords provided.
> Those responsive documents will be provided.
>
> Let me know please.
>
> ---
> Aaron Twersky, Esq.
> (212) 425-0149 (Office)
> (917) 992-0657 (Cell)
> atwersky@twerskylaw.com

Exhibit F - Email of September 5, 2023 (which was contained in an email string, a true and correct copy of which is submitted herewith.)

On September 6, 2023, Plaintiff's Counsel responded to Defendant's Counsel telling him that Plaintiff has no objection and that Defendant's choice of data extraction vendors was acceptable. Exhibit G, email of September 6, 2023. Plaintiff proposed language for a stipulation for that process to go forward. *Id.* Inexplicably, wrongly, and without citation, Defendant now complains: "Defendant even offered to have her vendor do the search for Plaintiff. However, Plaintiff did not diligently pursue that offer, choosing instead to disobey and not follow the Court's Order, tacking her with the consequences." Dkt. 92, pg. 4. As the evidence shows, Plaintiff made the offer, Defendant accepted the offer, and Plaintiff tried to move the process forward.

**5. In further compliance with the spirit of the Court's Order, Plaintiff proposed the practical solution of subpoenaing individuals with whom Defendants suspect Plaintiff communicated by data to produce documents.**

As if all the above efforts of Plaintiff were not sufficient, which they were, Plaintiff further proposed that the parties depose the individuals Defendant Sheinkopf believes have the suspected documents. Exhibit H is a true and correct copy of said correspondence. Therein, Plaintiff made the following proposal:

---

[2] Defendant directed her response to Plaintiff's Counsels' paralegal who had emailed Exhibit E to Sheinkopf's Counsel.

Plaintiff will of course fully comply with the Court's order regarding document production. However, the problem remains that there may be communications in the form of data Plaintiff once had on her devices that has since been lost. For example, as she explained in deposition, she lost data when she obtained a new phone. This data may be in the custody and control of the individuals identified in the Court's Order, which incorporates those identified in Dkt. 80, namely: Victoria Summers, Jacqueline Cohen, Dina Bender, Menucha Leib, Vared Zino, Elliot Spiro, Shimrit Adar, Rebecca Sina, Alexandra Sokolovsky, Marilyn Sokolovsky, Brach Davidowitz, Dina Levy, Yiddesel Braun, and Elliott Spiro. Dkt. 80 also references Leah Forster.

Plaintiff proposes the parties serve each of these individuals with a subpoena duces tecum requiring them to appear for deposition and "produce all documents and communications, including emails, texts, WhatsApp or other data containing:

1) any communications with Dorina Sokolovsky (aka Leah Sokolovsky) referencing in any way Gittie Sheinkopf, Oorah, an Oorah camp or the lawsuit involving Ms. Sokolovsky and Oorah and Ms. Sheinkopf;
2) any reference to sexual conduct or alleged sexual conduct involving Gittie Sheinkopf;
3) any reference to sexual conduct or alleged sexual conduct involving Gittie Sheinkopf with Dorina Sokolovsky (aka Leah Sokolovsky);
4) any reference to sexual conduct or alleged sexual conduct involving anyone at an Oorah Camp or the Zone.

Exh. H.

### 6. Sanctions on Plaintiff or her Counsel are not warranted.

Supporting her argument with grossly incorrect facts, Defendant invokes Fed. R. C. Proc. 37 as the basis for sanctions. Rule 37 empowers the Court to enter "further just orders" "If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery." *Id*. Plaintiff has obeyed the Court's Order, therefore sanctions are not allowable.

In support of her argument, Defendant Sheinkopf incorrectly states, "There is no doubt that Plaintiff failed to comply with the Court's Order, which warrants the grant of sanctions." As set forth above, Plaintiff has more than complied with the Court's Order.

Defendant Sheinkopf then incorrectly states Plaintiff's searches "all ***predate the Court's recent Order***. *See* ECF No. 91, ¶ 5." Dkt. 92, pg. 2. Defendant is apparently referencing paragraph 5 of Plaintiff's Affidavit where she identified all prior searches and productions so the Court is aware of the extensive searches and production she has already done. Defendant, however, omits

to acknowledge that Plaintiff made recent, detailed searches and data extraction efforts specifically to comply with the Court's Order. For example, Plaintiff clearly stated:

> My attorney's office has assisted me on more than one occasion in my effort to locate discoverable information and communications, including communications falling within the scope of this Court's Order. These efforts include recent efforts that exhaust our ability to search. To the extent we have found additional documents, I have produced them to Defendants, and I will continue to produce documents if I find more. I understand that my Counsel's Office is navigating the technology to download and process additional raw data that they will be providing to Defendant's e-discovery provider, pursuant to our agreement (see below). While I am unfamiliar with technical terms, I understand the technical description of these efforts are as follows:
>
>> A. In 2022, under the direction of my Counsels' Office (meaning several individuals at that office who assisted me), I searched my email (using Google's built-in search in Gmail) and forwarded any responsive communications I could find to my attorneys as attachments to preserve the native .msg file format and underlying original metadata. Those communications were then produced to Defendants as noted above.
>> B. Recently, with the assistance of my Counsels' Office, a complete copy of my email account leahsok@gmail.com was downloaded into an Outlook Data File (.ost), preserving the original metadata on each email contained therein and the entirety of my inbox as of August 31, 2023. That .ost file was then uploaded into a platform called GoldFynch (https://goldfynch.com) for further indexing and searching. My Counsel's Office then performed the following queries on that data:
>>
>>> a. They searched for any emails where the TO, FROM, CC, BCC, FROM ORIGINAL, PARTICIPANT.ADDRESS, SENDER.ADDRESS, or RECIPIENT.ADDRESS metadata fields contained any of the email addresses listed below:
>>> i. lilatunes@gmail.com (Leah Forster)
>>> ii. lforster@pthomecare.com (Leah Forster)
>>> iii. toriburch95@grnail.com (Victoria Summers)
>>> iv. victoriagrahamco@grnail.com (Victoria Summers)
>>> v. saracohen95@gmail.com (Jacquelin Cohen)
>>> vi. dinabender94@gmail.com (Dina Bender)
>>> vii. lilnybabex300@aol.com (Dina Bender)
>>> viii. tszanz@grnail.com (Elliot Spiro))
>>> ix. shimi.adar@facebook.com (Shimrit Adar)
>>> x. shimritadar@gmail.com (Shimrit Adar)
>>> xi. rebeccasina3@gmail.com (Rebecca Sina)
>>> xii. alexandrasokolovksy@gmail.com (Alexandra Sokolovsky)
>>> xiii. ssolnishkoO@yahoo.com (Alexandra Sokolovsky)

xiv. marilynsokolovsky@gmail.com (Marilyn Sokolovsky)

Dkt. 91, par. 6.

Plaintiff goes on to describe her efforts on August 31, 2023, to obtain data from her Facebook, Instagram, Apple iMessages and WhatsApp accounts. Dkt. 91, pars. 6C, D and E.

Defendant next incorrectly states that Plaintiff did not search for communications with the individuals referenced in the Order, to wit: Victoria Summers, Jacqueline Cohen, Dina Bender, Menucha Leib, Vared Zino, Elliot Spiro, Shimrit Adar, Rebecca Sina, Alexandra Sokolovsky, Marilyn Sokolovsky, Brach Davidowitz, Dina Levy, Yiddesel Braun, Elliott Spiro, Leah Forester, Suri Meisner, Shimrit Adar, Rivky Gross, Daniella Robin and Tamar. Defendant incorrectly states: "Additionally, in defiance of the Order, Plaintiff states that she searched for email communications with certain individuals, but not all. *See* ECF No. 91, ¶ 6(B)(a) i-xiv. ***Plaintiff failed to even search for email communications between herself and Menucha Leib, Vared Zino, Brach Davidowitz, Dina Levy, Yiddessel Braun, Danielle Robin, unknown counselor "Tamar," Suri Meisner, and Rivky Gross, all of whom were listed in Defendant Sheinkopf's Letter Motion***. *See* ECF No. 80." (Italics in the original).

On the contrary. First, Plaintiff specifically identifies she searched for "communications with the individuals referenced in the letter of Defendant Sheinkopf's Counsel (Dkt. 80)." Dkt. 91, par. 1. She further stated, "I have produced all the communications she [Defendant Sheinkopf] has requested that I can find." Dkt. 91, par. 8. By "all" Plaintiff means *all*, including all communications with individuals identified in Dkt. 80.

Second, Plaintiff specifically named Menucha Leib, Vared Zino, Dina Levy, and Yiddesel Braun in her Affidavit. *Id*. Plaintiff further produced the communications she found with Danielle Robin, Bates Nos. 936 and 937. Further still, Danielle Robin was Plaintiff's provider for whom Plaintiff previously gave Defendants releases to obtain her records, including an updated release on July 15, 2023.[3]

Plaintiff's Affidavit admittedly did not specifically name Suri Meisner, Shimrit Adar, Rivky Gross, Daniella Robin and "Tamar," however, the Undersigned Counsel has confirmed with his staff that they searched with Plaintiff specifically for communications with these individuals (and all the individuals identified in Dkt. 80). Plaintiff is filing a First Amended Affidavit clarifying this. To be clear, however, Plaintiff complied with the Court Order by searching for communications with these individuals. Plaintiff's searches included a search for the individual names, casting a wide net for any data containing their names. That is how Plaintiff's Counsels' staff identified the above email addresses that they used for further, refined searches. If there was a communication containing the name of the person, it presumably would have been found with the search for the name. If they did not find the individual's email address in the data, it indicated there was no communication with that individual in the data. Plaintiff Counsels' staff refined the

---

[3] The release was specifically addressed to Oorah Defendants' Counsel as were all releases because Defendants have the agreement that Oorah's Counsel will obtain provider records for all Defendants.

search to search the meta data fields listed above to locate what the Court ordered Plaintiff to locate, i.e. "relevant conversations with the individuals identified in defendant Sheinkopf's letter."

Plaintiff produced relevant communications she found, which included communications with the following individuals: Leah Forster, Victoria Summers, Jacqueline Cohen, Rebecca Sina, Alexandra Sokolovsky, Danielle Robin and Gittie Sheinkopf. Plaintiff produced communications for the individuals where she found communications. She did not produce communications with individuals for whom she found no communication.

Defendant next erroneously complains, "Plaintiff's Affidavit does not state that there is a lack of such responsive communications." Dkt. 92, pg. 2. Plaintiff stated in her Affidavit that she produced all the communications she could find, which is another way of saying if she didn't produce the communication, she did not find it:

> 8. Pursuant to my many searches, I have produced hundreds of pages of discovery to Defendants and much data, including productions to Defendant Gittie Sheinkopf. While it is distressing that the person who sexually abused me has such expansive access to my personal data and information, I have produced all the communications she has requested that I can find.
> 9. However, I am aware Defendant Sheinkopf, through her attorney, has implied, if not represented, that I have withheld communications. While this is untrue, I am further aware that Defendant Sheinkopf distrusts me and is vigorously defending herself. I am aware Defendant Sheinkopf does not believe me when I tell her that *I have produced everything I can find.*

Dkt. 91, pars 8-9.

Should the Court require the Plaintiff to use specific language in her Affidavit, she can incorporate the language in an amended affidavit.

Defendant incorrectly asserts, "With regards to Facebook, Instagram, iMessage and WhatsApp messages, it appears that Plaintiff is in various stages of exporting data from those custodians, but similarly has not provided any responses. *See* ECF No. 91, ¶¶ 6 (C)(D)(E). Once again, Plaintiff does not offer any excuse for her failure to produce." Dkt. 92, pg. 2. This is wrong. Plaintiff detailed in her affidavit her effort to search this data:

> C. An export of my Facebook and Instagram data was requested through my Meta Account. For Facebook, my Counsels' Office helped me request an export of messages and posts from January 1, 2009, to present (performed on August 31, 2023), to be exported in HTML format (JSON was also available). For Instagram, I requested an export of my comments and messages from January 1, 2009, to present (performed on August 31, 2023), exported in HTML format (JSON also available). I was told by Meta that a download link would be made available to me when the export was ready. I never received that link. My Counsel's Office has helped me re-request that data and the new request is still being processed by Meta.

> D. Our efforts to extract my text messages and Apple iMessages have largely failed due to technical issues beyond our expertise or control. To back up my text messages and Apple iMessages, I tried logging into my Apple account at icloud.com. My messages were not available there. With my Counsels' Office's assistance, we then obtained a backup of my iPhone through iTunes on an Apple Macbook. I copied the files containing the phone backup and provided them to my Counsels' Office. My Counsels' Office then attempted to open and analyze the backup file using iMazing (https://imazing.com/), a backup management and data exporting program for iOS devices. While iMazing recognized the backup, it did not find any text messages in the backup file and my Counsels' Office was unable to export my messages. At this time, my Counsel's Office believes technical assistance from Defendant's ESI collection and processing service will be necessary to extract and produce the message data on my phone, per our Agreement (See paragraphs 9 and 10 below and the agreement of parties regarding ESI and ediscovery assistance).
>
> E. Some of my WhatsApp messages have been exported through WhatsApp Web (https://web.whatsapp.com/) in a zip file format containing a text file of the entire thread, and copies of any photographic or audio media contained therein. I have provided those .zip files to my Counsel's Office to provide to the e-discovery provider, pursuant to our agreement.

Dkt. 91, pars. 6C, D and E.

In a footnote, Defendant criticizes Plaintiff for exporting her backup rather than searching her phone. Dkt. 92, pg. 2. Defendant omits to tell the Court what Plaintiff told Defendant in her deposition; Plaintiff has changed phones and therefore does not have access to data on her old phones. She cannot search phones she no longer has.

### 7. Motion for Protective Order; the Court should limit further discovery.

> Rule 26(c) affords protections for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed [*5] to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005). "[I]t is well within a magistrate judge's broad discretion to time document production." *Lang v. Wal-Mart Stores, Inc.*, No. 15-CV-2528 (JFB) (AYS), 2015 U.S. Dist. LEXIS 182916, at *3 (E.D.N.Y. July 16, 2015). "If the movant establishes good cause for protection, the court may balance the countervailing

interests to determine whether to exercise discretion and grant the order." *Rofail*, 227 F.R.D. at 55.

Avila v. Target Corp., 2021 U.S. Dist. LEXIS 181197, *4-5 (2021).

Good cause exists for an order protecting Plaintiff from the further burden and expense of searching more for communications that she has been unable to find and probably do not exist given, 1) her considerable efforts to date; and 2) her compliance with the Court's discovery Order.

The burden of further searching for the documents outweighs the likely benefit. *Id*. It is unclear what benefit Defendant seeks with this discovery. Admittedly, Plaintiff may benefit from it. For example, if there were emails in which she discussed Defendant's abuse of her, they would corroborate her testimony of the abuse. But Plaintiff already has considerable corroborative evidence in this case and sees no significant likely benefit coming from a further search for documents that may not exist.

The burden on Plaintiff to date to search for the e-discovery Defendant Sheinkopf insists is in existence has already surpassed reason. One of Plaintiff's Counsels' associates has spent 137 hours responding to discovery requests from both defendants in this case. A significant amount of that time was spent responding to the Court's Order. Another has logged 38.7 hours exclusively working on e-discovery. Specifically, since August 25, the second associate has spent 22.2 hours helping with responding to the Court's order. The undersigned Plaintiff's Counsel has spent more than 20 hrs. working with these associates, the client and others responding to the Court's Order, not including the hours spent working on this letter in response to Defendant's pre-motion letter.

Alternatively, the Court should Order Defendant Sheinkopf to engage an e-discovery vendor to conduct the data extraction and search at her expense, as she agreed to do.

As a practical matter, neither Plaintiff nor her Counsels are experts at data extraction and data searching (although Plaintiff's Counsels' staff did have some expertise that helped). They have reached the practical limits of their knowledge and resources. They are not e-discovery vendors. Nor can they achieve the level of producing documents that an e-discovery vendor can achieve.

Because Plaintiff and her Counsel have exhausted their ability and resources to search for data Defendant Sheinkopf suspects exists, Plaintiff entered into the above proposal that Defendant accepted to engage a third-party vendor to access and search her data. Defendant is now inexplicably trying to renege on that agreement. Defendant, having accepted this proposal, is now trying to trap Plaintiff into the unjust position of being burdened to disprove the negative with endless searching for documents that probably do not exist.

Therefore, Should the Court not enter an order foreclosing Defendant Sheinkopf from further discovery, it should order Defendant Sheinkopf to comply with her agreement to engage an e-discovery vendor at her expense to search Plaintiff's data. Assuming Defendant Sheinkopf's

motive is to truly find data communications that may or may not exist, and to avoid the endless back and forth of Sheinkopf accusing Plaintiff of hiding documents Plaintiff cannot find, the Court should enter a practical Protective Order that 1) protects Plaintiff from further burden and expense of document demands by Sheinkopf, but 2) provides Sheinkopf access to Plaintiff's data through a third-party vendor, as Defendant Sheinkopf already agreed. This solution solves the practical problems before the Court and removes the roadblock of this issue so the case can move forward.

Plaintiff therefore respectfully requests that, if the Court does not protect Plaintiff from further discovery, the Court enter an Order for the parties to comply with their Agreement, to wit:

a. Defendants engage an independent e-discovery provider, at their expense, to perform the requested ESI data collection on Plaintiff's accounts and devices for relevant data under terms that protect plaintiff and other third parties from disclosure of non-relevant information;
b. Plaintiff will then cooperate with the independent e-discovery provider to provide access to her information, including providing her passwords, data exports and other related permissions to access the underlying relevant native data;
c. The e-discovery provider would then perform a managed review of the collected data to determine what data is relevant and produce any relevant data in the specific load file and tiff images formats requested by Defendants to all parties.

As for "terms that protect plaintiff and other third parties from disclosure of non-relevant information," Plaintiff respectfully proposes the Court include the following:

a. The vendor will comply with the Court's Confidentiality Order (Dkt. 62);
b. Plaintiff's disclosure of data and information to the third-party vendor shall not constitute a waiver of the attorney-client privilege;
c. The third-party vendor shall not disclose any attorney-client privilege information, including any communications exclusively between Plaintiff and her attorney or her attorney's staff;
d. The vendor shall produce identical copies of all data falling within the scope of the search described herein only to Plaintiff's Counsel, Defendant Sheinkopf's Counsel and Oorah Defendants' Counsel;
e. Defendant Sheinkopf shall be solely responsible for the cost of the e-discovery search, including any expense incurred with the vendor; and
f. The vendor shall identify and produce all data relevant to Plaintiff's allegations and all documents and communications regarding plaintiff's relevant conversations with the individuals identified in Dkt. 80.

8. **Defendant Sheinkopf should bear the cost of the independent e-discovery provider review**.

[A]s part of limiting discovery, Rule 26(b)(2) allows a judge to assess the burden of a discovery request with regard to its likely benefit and to shift "some or all of the costs of production to the requesting party." *Chao v. 3RE.com, Inc.,* No. 01-2350-MIV, 2003 U.S. Dist. LEXIS 14064, at *6 (W.D. Tenn. July 28, 2003) (citing *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 358, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978)); *Zonaras v. GMC,* No. C-3-94-161, 1996 U.S. Dist. LEXIS 22535, at *4-6 (S.D. Ohio Oct. 17, 1996) (instructing the requesting party to bear half of the costs of discovery).

This interpretation of Rule 26(b)(2) comports with the 1983 and 1993 changes to the rule. The Advisory Committee Notes expressly state that judges may take into account financially' weak" litigants when issuing discovery orders. Advisory Committee Notes to 1983 Amendment to Rule 26(b)(2). Further, the changes to the rule in 1993 emphasize that, [**7] "the revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery …." Advisory Committee Notes to 1993 Amendment to Rule 26(b)(2).

Significantly, the 2000 changes note that the limitations set forth in Rule 26(b)(2) are meant to apply to all discovery matters and that the discretion afforded to judges by Rule 26(b)(2) has not been used "with the vigor that was contemplated." Advisory Committee Notes to 2000 Amendment to Rule 26(b)(2); *see Thompson v. Dept' of Hous. and Urban Dev.,* 199 F.R.D. 168, 171 (D. Md. 2001) (summarizing the various changes to Rule 26(b)(2) from 1970 to 2000)). Therefore, the Court finds that the maturation of Rule 26(b)(2) over several decades allows judges to use the limitations of Rule 26(b)(2) with increasing frequency and with an eye toward equity. This, undeniably, includes cost-shifting in discovery.

*UPS of Am., Inc. v. The Net, Inc.*, 222 F.R.D. 69, 71 (2004).

Defendant Sheinkopf accepted Plaintiff's proposal to engage an independent e-discovery provider *at Defendants' expense*. Defendant Sheinkopf should pay for the review because by accepting Plaintiff's proposal she agreed and admitted that Defendants should bear the cost. Further, her attorney proposed a vendor he has used in the past. See Exh. F. The reasonable inference is that he knows how much the vendor costs and he accepted the proposal because his client can afford the cost.

By contrast, Plaintiff is a sexual abuse survivor who just graduated from nursing school. She is currently unemployed and studying to pass boards. She only has a few thousand dollars in her bank account and no meaningful assets. She does not own a home or even a car. Her mother helps her with groceries. To burden Plaintiff with the cost of an e-discovery vendor under these circumstances is inequitable. UPS of Am., Inc., *supra*.

9. **Should the Court find Plaintiff has not fully complied with its Order, or should the Court order further data extraction and searching, Plaintiff moves for an extension of time given the practical problems with accessing and searching data.**

As set forth above, Plaintiff has more than complied with the Court's Order. However, if for some reason, the Court finds Plaintiff did not comply, Plaintiff moves for additional time to do so in light of the practical complications accessing data.

Similarly, should the Court order the Defendant to engage her vendor to search Plaintiff's data, as a practical matter additional time is needed for the parties to accomplish this. Therefore, should that be the Court's Order, Plaintiff moves for additional time for the parties to accomplish this.

> **(b) Extending Time.**
> **(1)** *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> **(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> **(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.

[USCS Fed Rules Civ Proc R 6](#).

Should the Court find that Plaintiff somehow did not comply with the Order by producing the additional 402 pages of documents she found and produced to Defendants or that her Affidavit was somehow insufficient, there are at least these five grounds for excusable neglect:

1. Plaintiff in good faith believed she was complying with the Court's Order. The Order provided she produce documents *or* file an affidavit. She did both. She in good faith believed she more than complied with the Court Order.

2. Plaintiff cannot know what problem there is with her effort to comply with the Court's order until the Court identifies that problem. Plaintiff is ready and willing to make any corrections to her document production or affidavit that the Court finds should be made.

3. At the time she produced the additional documents and filed her Affidavit, Plaintiff in good faith believed that she and Defendant Sheinkopf had an agreement that Defendant's vendor would search her data. She believed this agreement more than satisfied the Court's order. She similarly believed in good faith that Defendant Sheinkopf's Counsel and her Counsel would work out the details and accomplish this.

4. The time, effort, resources and expertise needed to locate all of Plaintiff's possible data in the world could not be accomplished in the time allowed by the Court's Order despite Plaintiff's good faith attempt.

5. Data not in Plaintiff's possession has yet to be provided by Meta. Plaintiff can only search data or provide Defendant's vendor with data that she has in her possession. Plaintiff has

requested files from Meta in a format that can be searched and converted to the format Defendant has requested.  Meta has not yet responded to her, despite multiple attempts.  As a practical matter, the parties may need to serve Meta with a subpoena to obtain its compliance.

**Conclusion.**

The Court should deny Defendant's Motions.  The Court should enter an appropriate protective order protecting Plaintiff.  If the Court somehow finds Plaintiff did not comply with its Order, or if the Court orders further data extraction and searching, the Court should grant the parties, and specifically Plaintiff, additional time to comply therewith.

JAMES, VERNON & WEEKS, P.A.
TOLMAGE, PESKIN, HARRIS, FALICK

/s/ Leander L. James

By: _____
Leander L. James