UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DORINA SOKOLOVSKY,

                            Plaintiff,

                -against-

OORAH, INC., *et al.*,

                            Defendants.
--------------------------------------------------------X

**ORDER**
20 CV 4116 (DG) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 5, 2020, plaintiff Dorina Sokolovsky ("plaintiff") commenced this action in the Supreme Court of the State of New York, Kings County, against defendants Oorah, Inc. and Oorah Catskills Retreat LLC a/k/a "The Zone" (collectively, "Oorah"), as well as defendant Gittie Sheinkopf ("Sheinkopf" and, collectively with Oorah, the "defendants"). Plaintiff alleges that she was sexually assaulted by Sheinkopf while attending a summer camp owned and operated by Oorah and while Sheinkopf was an employee there. (ECF No. 1-2). Defendants removed this action to federal court on September 2, 2020. (ECF No. 1).

Currently pending before this Court are: (1) Oorah's letter motion to seal certain documents filed in connection with a prior discovery dispute (the "Motion to Seal" or "Mot. Seal") (ECF No. 81); (2) Sheinkopf's letter motion for sanctions (the "Motion for Sanctions" or "Mot. Sanctions") (ECF No. 92); and (3) plaintiff's letter motion for a protective order regarding further discovery of electronically stored information ("ESI") ("plaintiff's Motion" or "Pl.'s Mot.") (ECF No. 93). The Court addresses each in turn.

## PROCEDURAL HISTORY

On August 22, 2023, this Court issued an Order resolving several discovery disputes and setting deadlines for several depositions (the "August Order" or "Aug. Order"). (ECF No. 86). Specifically:

1. Plaintiff was Ordered to produce all communications regarding her relevant conversations with individuals identified by Sheinkopf, or file an affidavit stating that none could be located, by September 8, 2023 (Aug. Order at 2);

2. Sheinkopf was Ordered to depose plaintiff for an additional three hours by September 22, 2023 (id. at 4);[1]

3. Defendants were Ordered to produce Sheinkopf and third-party Rabbi Binyomin Gissinger for deposition by plaintiff's counsel by October 23, 2023 (id. at 4);[2] and

4. The parties were Ordered to file a status report by November 10, 2023, proposing a revised discovery and motions schedule (id. at 5).

(Aug. Order at 1, 5). In addition, the Court Ordered Oorah to show good cause why exhibits filed in redacted form with the preceding motion—excerpts of the transcript from plaintiff's first day of deposition testimony (see ECF Nos. 82-1, 84-1)—should be sealed. (Aug. Order at 4–5).

On September 8, 2023, plaintiff filed an affidavit detailing her efforts to locate and produce the communications detailed in the August Order. (See Pl.'s Aff.[3]). In sum, plaintiff's Affidavit indicated that she had searched extensively for the communications Sheinkopf requested and produced everything she could find. (Id. ¶¶ 1, 3–8). Plaintiff also included two proposals that would "giv[e] [the defendants] full access to obtain relevant documents from the

---

[1] This Court continued sine die Sheinkopf's time to further depose plaintiff pending resolution of Sheinkopf's outstanding motion for sanctions concerning plaintiff's compliance with the August Order. (See Electronic Order, dated September 15, 2023; ECF Nos. 92–96).
[2] This Court denied Oorah's attempt to delay the depositions by plaintiff's counsel pending resolution of the motions addressed herein. (See ECF No. 99).
[3] Citations to "Pl.'s Aff." refer to the Affidavit of Dorina 'Leah' Sokolovsky in Response to Court Order, dated September 8, 2023. (ECF No. 91).

named individuals and to have an independent vendor search for relevant documents, including any communications with the individuals referenced in the Court's Order." (Id. ¶ 10).[4]  In response to the Affidavit, Sheinkopf filed a letter Motion for Sanctions on September 15, 2023 (See Mot. Sanctions), at which point the Court set a briefing schedule.  (See Electronic Order, dated September 15, 2023).

Plaintiff filed a letter responding to the Motion for Sanctions, which included a Motion for a Protective Order, on September 22, 2023.  (See Pl.'s Mot.).  That same day, she filed an amended affidavit concerning her search for and production of the documents and communications at issue.  (See Pl.'s Am. Aff.[5]).  Sheinkopf's reply and response to plaintiff's Motion for a Protective Order were originally due September 27, 2023, but that deadline was twice extended, resulting in a deadline of October 19, 2023.  (See Electronic Orders, dated September 27, 2023, and October 6, 2023).  In both instances, the parties had jointly requested the extension of time to permit the parties to resolve the discovery dispute without the Court's assistance by meeting and conferring and exchanging drafts of an ESI discovery stipulation.  (See ECF Nos. 95, 96).

On October 19, 2023, Sheinkopf once again sought to extend her deadline to file a reply, this time until October 26, 2023.  Sheinkopf insisted that the parties were "very close to coming to an agreement on the final terms of the stipulation regarding ESI discovery" and that the stipulation "should be complete by early next week."  (ECF No. 102).  Sheinkopf failed to mention, however, that plaintiff was opposed to further extending the deadline, and plaintiff filed

---

[4] Plaintiff also attached email correspondence purportedly showing that Sheinkopf's counsel had accepted plaintiff's proposal regarding use of a discovery vendor at Sheinkopf's expense.  (Pl.'s Aff. ¶¶ 10–11 (citing ECF Nos. 91-1, 91-2, 91-3)).  Sheinkopf later asserted that the proposals in Plaintiff's Affidavit differed from those that the parties had previously discussed.

[5] Citations to "Pl.'s Am. Aff." refer to the Amended Affidavit of Dorina 'Leah' Sokolovsky in Response to Court Order, dated September 22, 2023.  (ECF No. 94).

her opposition later that day. (See Oct. 19th Ltr.[6]). Plaintiff disagreed that the parties were

nearing an agreement on an ESI stipulation. (Id. at 1). Plaintiff further argued that Sheinkopf's

proposed stipulation would "expand[] the scope of [plaintiff's] search beyond what [Sheinkopf]

previously requested, and this Court previously Ordered," and that Sheinkopf was using the

threat of sanctions premised on "inaccurate factual representations" to extract "concessions to a

stipulation" from plaintiff. (Id. at 2). The next day, Sheinkopf finally filed her reply, which

included a response to plaintiff's October 19th Letter. (See Oct. 20th Ltr.[7]).

OORAH'S MOTION TO SEAL

I. <u>Legal Standard</u>

To determine whether it is appropriate to file documents under seal, the Court engages in

a two-part inquiry. First, the court decides how strong a presumption of public access a

document deserves, which "will vary with its role in the adjudicatory process." <u>Cumberland</u>

<u>Packing Corp. v. Monsanto Co.</u>, 184 F.R.D. 504, 505 (E.D.N.Y. 1999). Next, the court must

"balance the weight of that presumption, if any, with competing interests, namely, the private

interests and concerns of judicial efficiency and law enforcement, to determine whether or not to

seal a document." <u>Id.</u> at 506.

With respect to the first part of the inquiry, "judicial documents" are presumptively

subject to public inspection. <u>See</u> <u>United States v. Amodeo</u> ("<u>Amodeo I</u>"), 44 F.3d 141, 146 (2d

Cir. 1995). A "judicial document" is one that is presented to the court and "relevant to the

performance of the judicial function and useful in the judicial process." <u>Id.</u> at 145. The

presumption of access that attends judicial documents stems both from the common law tradition

---

[6] Citations to "Oct. 19th Ltr." refer to plaintiff's letter in opposition to Sheinkopf's extension motion, filed October 19, 2023. (ECF No. 103). Plaintiff mistakenly filed an identical copy of her letter in opposition as ECF No. 104.
[7] Citations to "Oct. 20th Ltr." refer to Sheinkopf's letter in reply to plaintiff's October 19th Letter and in further support of the Motion for Sanctions, filed October 20, 2023. (ECF No. 105).

4

and from the Constitution: "[a]s the exercise of Article III [judicial] powers is a formal act of government, it should be subject to public scrutiny absent 'exceptional circumstances.'" Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. at 505 (quoting United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1049 (2d Cir. 1995)). For example, summary judgment motions and related supporting documents, and pretrial motions and related supporting documents, are judicial documents because they directly affect adjudication or determine substantive rights. See Newsday LLC v. County of Nassau, 730 F.3d 156, 164 (2d Cir. 2013); Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 124 (2d Cir. 2006).

By contrast, documents exchanged between the parties during discovery are not "judicial documents" because they play no role in the performance of Article III functions. Amodeo II, 71 F.3d at 1050 (noting that documents exchanged during discovery "stand on a different footing than . . . a motion filed by a party seeking action by the court or . . . any other document which is presented to the court to invoke its powers or affect its decisions" (internal citations and quotation marks omitted)); see also S.E.C. v. TheStreet.Com, 273 F.3d 222, 233 (2d Cir. 2001) (holding that discovery documents analyzed by the district court for no purpose other than to determine whether they should be sealed were non-judicial documents).

## II.  Analysis

Oorah seeks to seal certain portions of plaintiff's deposition transcript that Oorah filed in redacted form in connection with a prior discovery dispute. (ECF Nos. 82-1, 84-1).[8] Specifically, Oorah redacted (1) testimony concerning Sheinkopf's (the alleged perpetrator) conduct that supposedly evidences Sheinkopf's jealousy over plaintiff's relationship with

---

[8] Although Oorah's motion also mentioned portions of plaintiff's discovery responses (Mot. Seal at 1), neither party has discussed such documents in any subsequent filings. The Court therefore construes the Motion to Seal as solely concerning plaintiff's deposition transcript.

plaintiff's boyfriend at the time of the underlying incident; (2) testimony including the name of plaintiff's boyfriend at the time of the underlying incident; (3) testimony referencing a third-party witness with knowledge of the alleged abuse; (4) testimony referencing a third party that encouraged plaintiff to come forward as a victim of sexual abuse; and (5) testimony referencing a third party who provided plaintiff with psychiatric treatment, as well as testimony regarding the nature of that treatment. (Pl.'s Ltr. re Sealing[9] at 3–4).[10] Plaintiff argues that only items (2) and (5) should be sealed. (Id. at 3–5).

For the reasons set forth below, Oorah's Motion to Seal is DENIED as to items (1), (3), and (4), and GRANTED as to items (2) and (5).

A. Whether the Deposition Transcript is a Judicial Document

Oorah does not address the threshold question of whether plaintiff's deposition transcript constitutes a judicial document subject to the presumption of public access. Plaintiff argues that the transcript is a judicial document because Oorah filed the transcript in connection with its motion to compel, and the document was thus "relevant to the performance of the judicial function." (Pl.'s Ltr. re Sealing at 1 (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006); see also id. at 1–2 (citing this Court's prior opinion in Uni-Systems, LLC v. United States Tennis Ass'n, No. 17 CV 147, 2019 WL 11663795, at *2 (E.D.N.Y. Mar. 27, 2019), for the proposition that "[j]udicial documents presented . . . in connection with a discovery dispute are subject to the presumption of public access").

---

[9] Citations to "Pl.'s Ltr. re Sealing" refer to plaintiff's letter in response to the Motion to Seal, filed September 5, 2023. (ECF No. 90).

[10] The Court cannot independently verify the content of the redacted portions of the transcript because Oorah failed to provide the Court with unredacted copies of the transcript. Nonetheless, Oorah has not contested plaintiff's assertions about the content of plaintiff's testimony in the redacted portions of the excerpts, and the Court has no reason to doubt the accuracy of those assertions.

The Court agrees with plaintiff's analysis. Ordinarily, documents exchanged between the parties in the course of discovery are not subject to the presumption of public access. See Amodeo II, 71 F.3d at 1050. Once those documents have been presented to the court for the purpose of furthering a judicial function, however, their nature shifts to one that is inherently tied to a judicial function. Thus, because Oorah filed the deposition transcript in connection with its discovery motion, the transcript constitutes a judicial document subject to the presumption of public access. See Uni-Systems, LLC v. United States Tennis Ass'n, 2019 WL 11663795, at *2. The only question, then, is whether Oorah has overcome that presumption.

     B.     Presumption of Public Access

Oorah initially argued that the documents needed to be sealed because they "may contain sensitive information." (Mot. Seal; see also ECF No. 82 at 2 n.1). In its subsequent filing, Oorah argued that the documents contained "inherently confidential information," the exposure of which may "lead to a 'clearly defined and very serious injury" because they contain "discussion of a medical provider's identity" as well as "sensitive information about Plaintiff and her purported treatment . . . ." (Oorah's Ltr. re Sealing[11] at 1).[12] In response, plaintiff argues that with two exceptions, Oorah has not demonstrated that sealing will "further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege" such that the presumption of access is overcome. (Pl.'s Ltr. re Sealing at 2 (citing Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018)); see also id. at 2–3).

---

[11] Citations to "Oorah's Ltr. re Sealing" refer to Oorah's letter in further support of its Motion to Seal and in response to the August Order, filed August 29, 2023. (ECF No. 87).

[12] Oorah notes that it initially filed the redacted version of the documents "[a]s a precautionary measure." (Oorah's Ltr. re Sealing at 1). The parties are reminded that they are not permitted to freely file redacted documents in connection with a motion to seal, and that they should follow the procedures set forth on the website for the Eastern District of New York when bringing future motions to seal.

First, the Court concludes that there is no competing interest that outweighs the presumption of access to the testimony concerning Sheinkopf's conduct (item (1)), but that such an interest exists as to the name of plaintiff's boyfriend (item (2)).  Oorah does not raise specific arguments with respect to the testimony about either individual.  As to the boyfriend's name, plaintiff argues that it should remain redacted because the public "has no interest" in knowing his name and because "[h]e is an innocent third party who may be embarrassed by disclosure of testimony" about Sheinkopf's jealousy.  Given that this is a judicial document, the document as a whole is presumed to be a matter of public record unless a "competing interest" outweighs the presumption of public access; whether the public does or does not have a compelling interest in specific pieces of information is not determinative of whether the document should remain publicly available.  Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. at 506.  The potential for embarrassment and "[g]eneralized concerns of adverse publicity" for  Sheinkopf is not sufficiently weighty interests to overcome that presumption.  Bersten v. O'Reilly, 307 F. Supp. 3d at 169; see also Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011) (noting that third parties typically have "relatively weak privacy interests").

As for plaintiff's boyfriend, however, it is at least possible that he was a minor at the time of the events at question, and, in any event, neither his name nor his relationship with plaintiff has been relevant to the Court's disposition of any motion to date.  That being the case, the interest in maintaining the privacy of an innocent bystander outweighs the public's interest in the testimony, at least at this time.

Second, with respect to the portions of the testimony referencing the third-party witness and the third party who encouraged plaintiff to come forward (items (3) and (4)), neither party has presented an argument that a competing interest outweighs the right of public access.  The

Court therefore concludes that such portions of the testimony should remain unsealed and unredacted.

Finally, with respect to the portions of the transcript concerning plaintiff's medical treatment (item (5)), both parties insist that disclosure of the testimony would violate a privacy interest that outweighs the right of public access to judicial documents. (Def.'s Ltr. re Sealing at 1; Pl.'s Ltr. re Sealing at 4). Plaintiff, for her part, argues that the privacy concerns at issue are not those of the medical provider but, rather, her own "private interests of not exposing her psychiatric history publicly." (Pl.'s Ltr. re Sealing at 4). The Court agrees. Documents and testimony containing sensitive health, financial, and personal information are typically viewed as private and therefore subject to protection from disclosure to public. See Sterbens v. Sound Shore Med. Ctr., No. 01 Civ. 5980, 2001 WL 1549228, at *3 (S.D.N.Y. Dec. 5, 2001). That privacy interest is even greater where, as here, it involves sensitive issues such as alleged child sexual abuse.

In light of the above, this Court concludes that, with the exception of the testimony about plaintiff's medical history and the name of plaintiff's boyfriend, Oorah has not shown substantial interest sufficient to overcome the presumption of public access. Oorah's Motion to Seal is therefore DENIED as to items (1), (3), and (4), and GRANTED as to items (2) and (5). By **December 4, 2023**, Oorah shall file a letter attaching a sealed, unredacted version of the deposition transcript for the Court's reference, as well as a publicly accessible version of the deposition transcript that redacts only plaintiff's testimony about her medical treatment and the name of her boyfriend, as described above.[13]

---

[13] The Court also rejects Oorah's request that the documents "be retained in the redacted version in which they were originally submitted" in the event that Oorah's Motion is denied. (See Oorah's Ltr. re Sealing at 2). Oorah made clear that the redactions within the deposition transcript were meant to seal the supposedly sensitive information that Oorah cited as a basis for its Motion to Seal. (See Mot. Seal). Outside of the limited redactions

<u>SHEINKOPF'S AND PLAINTIFF'S MOTIONS</u>

The remaining disputes stem from the portion of the August Order directing plaintiff to "produce all documents and communications regarding plaintiff's relevant conversations with the individuals identified in defendant Sheinkopf's letter" or, "[i]n the event that plaintiff cannot identify any such documents or communications, plaintiff shall file an affidavit with this Court verifying the absence of any responsive documents and detailing her search efforts." (Aug. Order at 2). Sheinkopf asserts that plaintiff failed to search for or produce the required communications and accordingly seeks discovery sanctions in the form of monetary fees and an order striking plaintiff's pleadings. (Mot. Sanctions at 4). Plaintiff, meanwhile, insists that she has fully complied with the August Order and that this Court should enter an order protecting her "from the further burden and expense of searching [for more] communications." (Pl.'s Mot. at 10).

For the reasons set forth below, Sheinkopf's Motion for Sanctions is DENIED, and plaintiff's Motion for a Protective Order is GRANTED in part and DENIED in part.

I. <u>Discovery Sanctions</u>

A. <u>Legal Standard</u>

Sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order. <u>See, e.g.</u>, <u>Penthouse Int'l, Ltd. v. Playboy Enters., Inc.</u>, 663 F.2d 371, 386 (2d Cir. 1981); <u>see also</u> <u>Prelvukaj v. Naselli</u>, No. 19 CV 5939, 2023 WL 3570659, at *4 (E.D.N.Y. May 18, 2023). Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders. <u>See, e.g.</u>, <u>World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.</u>, 694 F.3d 155, 158 (2d Cir. 2012). Rule 37 provides in

---

permitted above, allowing Oorah to file an equally redacted version of the transcript would be, at least from the public's perspective, no different than granting the Motion to Seal in full.

relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate to sanctions under Rule 37(b). See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991).

For violations of such an order, Rule 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii). In addition, the Rule provides that the court may issue an order that certain "designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i); cf. Prelvukaj v. Naselli, 2023 WL 3570659, at *7, or the court may issue an order "prohibiting the disobedient party from . . . introducing designated matters in evidence," Fed. R. Civ. P. 37(b)(2)(A)(ii); see also, e.g., Figueroa v. W.M. Barr & Co., Inc., No. 18 CV 11187, 2020 WL 996473, at * 4 (S.D.N.Y. Mar. 2, 2020) (precluding plaintiff from introducing or relying on an expert report in response to a summary judgment motion or at trial). In lieu of or in addition to these sanctions, the Rule requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In evaluating the appropriate severity of discovery sanctions, courts consider the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for

noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." <u>Bhagwanani v. Brown</u>, 665 F. App'x 41, 42–43 (2d Cir. 2016) (summary order) (quoting <u>Agiwal v. Mid Island Mortg. Corp.</u>, 555 F.3d 298, 302 (2d Cir. 2009)). Significant prejudice to the moving party may counsel for a harsher sanction, but a lack of prejudice to the moving party does not counsel against the imposition of a sanction. <u>Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.</u>, No. 18 CV 1471, 2020 WL 1172635, at *6 (E.D.N.Y. Feb. 20, 2020).

   B.   <u>Analysis</u>

The crux of Sheinkopf's Motion for Sanctions is that plaintiff failed to comply with the August Order by failing to "search through the documents she collected, much less produce the responsive documents." (Mot. Sanctions at 3). In light of that alleged failure, Sheinkopf argues that "the Court should impose the most extreme consequence in this case and strike Plaintiff's pleading." (<u>Id.</u> at 4). Sheinkopf also argues that the Court should impose monetary sanctions in the form of "Sheinkopf's reasonable fees and attorney expenses." (<u>Id.</u> at 4–5).

Sheinkopf's Motion fails because (1) Sheinkopf's narrative concerning plaintiff's noncompliance is largely belied by the record, and (2) the requested sanctions are vastly disproportionate to the complained-of conduct.

   1.   <u>Plaintiff's Compliance with the August Order</u>

First, Sheinkopf argues that the Affidavit plaintiff filed on September 8, 2023, does not satisfy the August Order because it only details plaintiff's searches prior to the entry of the August Order. (Mot. Sanctions at 2 (citing Pl.'s Aff. ¶ 5)). That argument plainly misrepresents the content of the Affidavit. As plaintiff points out, Sheinkopf's argument refers only to Paragraph 5 of the Affidavit, which identifies prior searches and productions. (Pl.'s Mot. at 5).

In the paragraphs that immediately follow, however, plaintiff describes her extensive efforts to collect and search the ESI Sheinkopf seeks in response to the August Order. (Id. at 5–6 (citing Pl.'s Aff. ¶¶ 6(B)–(E))).

Second, Sheinkopf claims that plaintiff "admits" that she and her counsel "are not properly equipped to do the searches" and that they "have [not] searched documents that were recently collected." (Mot. Sanctions at 2 (citing Pl.'s Aff. ¶ 6)). Sheinkopf significantly overstates the degree to which plaintiff and her counsel have encountered issues in searching for the requested communications. Plaintiff's Affidavits detail prior and ongoing searches conducted by plaintiff's counsel and indicate that, despite technical difficulties, they have searched for the communications Ordered to the best of their ability. (See Pl.'s Aff. ¶¶ 6(B); Pl.'s Am. Aff. ¶¶ 6(C), 6(F)). Although plaintiff's Affidavit does identify certain categories of data that she is currently incapable of reviewing without the assistance of an ESI collection and processing service (see, e.g., Pl.'s Aff. ¶¶ 6(D); Pl.'s Am. Aff. ¶¶ 6(E)), there is nothing to suggest that these categories amount to the majority of requested communications.

Third, Sheinkopf argues that plaintiff "has not produced any communications" and that the affidavit, rather than stating that no responsive communications exist, "states that Plaintiff has not completed her review." (Mot. Sanctions at 2 (citing Pl.'s Aff. ¶ 6(B))). As Sheinkopf later admitted, however, plaintiff did in fact produce communications as Ordered, and it was Sheinkopf's counsel who failed to realize that the communications had been produced. (See Oct. 20th Ltr. at 1). Indeed, on September 8, 2023, plaintiff produced approximately 402 pages of documents, all of which came from her search for communications in response to the August Order. (Pl.'s Mot. at 3; see also Pl.'s Am. Aff. ¶ 6). Plaintiff's Affidavit makes clear that "[t]o the extent [she] ha[s] found additional documents, [she] ha[s] produced them to Defendants, and

[she] will continue to produce documents if [she] find[s] more."  (Pl.'s Aff. ¶ 6; see also Pl.'s Am. Aff. ¶ 6).

Granted, there are certain categories of communications for which plaintiff needs additional time and/or the assistance of an ESI vendor.  (See Pl.'s Aff. ¶¶ 6(C), 6(D); Pl.'s Am. Aff. ¶¶ 6(D), 6(E)).  Rather than simply stating in her affidavit that she had not yet completed the collection, review, and production of those documents, plaintiff should have sought an extension of time from this Court if she felt more time was needed.  Nonetheless, there is little basis for Sheinkopf's suggestion that plaintiff's delay amounts to a violation of the August Order worthy of sanctions, at least at this juncture.

Fourth, Sheinkopf argues that plaintiff has not searched for email communications with all individuals listed in Sheinkopf's prior letter.[14]  (Mot. Sanctions at 2 (citing Pl.'s Aff. ¶¶ 6(C)–(E))).  As indicated by her Motion and her Amended Affidavit, however, plaintiff's omission of those individuals from the original Affidavit was nothing more than a clerical error.  (See id. at 7 (stating that plaintiff's counsel "has confirmed with his staff that they searched with [p]laintiff specifically for communications with these individuals (and all the individuals identified in [Sheinkopf's letter])" and that "[p]laintiff's searches included a search for the individual names, casting a wide net for any data containing their names"); Pl.'s Am. Aff. ¶ 1).  Plaintiff has thus complied with the August Order insofar as she has searched for communications with all individuals identified by Sheinkopf.

In short, plaintiff has largely complied with the letter and spirit of the August Order by producing the communications she has been able to locate, and by filing a detailed affidavit

---

[14] Specifically, Sheinkopf asserts that plaintiff failed to search for emails between herself and "Menucha Leib, Vared Zino, Brach Davidowitz, Dina Levy, Yiddessel Braun, Danielle Robin, unknown counselor 'Tamar,' Suri Meisner, and Rivky Gross, all of whom were listed in Defendant Sheinkopf's Letter Motion."  (Mot. Sanctions at 2 (citing ECF No. 80)).

concerning the nature of and difficulties with her searches.  Although plaintiff failed to complete her search by the Court-ordered deadline, and failed to seek an extension of that deadline, such a delay is not the egregious violation of the August Order that Sheinkopf makes it out to be.

2.      Propriety of Sanctions

Sheinkopf asks the Court to impose the most extreme discovery sanctions available under Rule 37(b)(2) by striking plaintiff's pleading, in effect ending the litigation.  (Mot. Sanctions at 4).  Even if Sheinkopf's representations about plaintiff's noncompliance were accurate, which they are not, the requested sanctions would still be vastly overbroad.

The appropriate severity of a sanction for failure to comply with a discovery order is contingent upon "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Bhagwanani v. Brown, 665 F. App'x at 42–43 (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d at 302).  None of those factors favors the extent of sanctions urged by Sheinkopf.  The Motion for Sanctions was filed exactly one week after plaintiff's original deadline to comply with the August Order; plaintiff has not engaged in a pattern of noncompliance; and plaintiff has not previously faced or been threatened with discovery sanctions in this action.  Moreover, the record indicates that plaintiff's minor noncompliance to date is owing not to willful disobedience but rather issues of feasibility and technical competence, both of which plaintiff's counsel is working to mitigate.  (See Pl.'s Mot. at 13–14; Pl.'s Aff. ¶¶ 6–8; Pl.'s Am. Aff. ¶ 6).  Sheinkopf does not cite a single case indicating that severe discovery sanctions are appropriate in such circumstances, nor is this Court aware of any such authority.

Moreover, any possible prejudice to Sheinkopf resulting from plaintiff's minor delay could have been, and indeed was mitigated by an order staying the deadline for plaintiff's

continued deposition until after plaintiff had completed her production. (See Electronic Order, dated September 15, 2023 ("Defendant Sheinkopf's time to complete their continued deposition of plaintiff is extended *sine die* pending resolution of the aforementioned discovery dispute")). For that same reason, contrary to Sheinkopf's assertion that plaintiff will "benefit from her failure to comply" with the August Order by "avoid[ing] examination on the unproduced records at her continued deposition" (Mot. Sanctions at 4), the Court's ruling ensures that counsel will have all the necessary discovery prior to the deposition.

As for monetary sanctions, Rule 37 requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The court concludes that an award of fees and expenses here would be unjust in light of plaintiff's good faith, ongoing efforts to comply with the August Order, as detailed in her Affidavits and elsewhere. (See, e.g., Pl.'s Mot. at 13–14; Pl.'s Am. Aff. ¶¶ 6–10).

On the other hand, the Court is troubled by the multitude of signs that Sheinkopf filed her Motion for Sanctions without engaging in the degree of due diligence that is expected of parties before they bring their grievances before the court. This in turn has further delayed discovery and depositions by nearly two months.

Sheinkopf filed the Motion for Sanctions in part on the ground that plaintiff had not produced any documents pursuant to the August Order. Sheinkopf was mistaken, however; in fact, the face of plaintiff's original Affidavit indicates that plaintiff had produced documents pursuant to the August Order:

> I continue to search for communications and discoverable information . . . , including communications falling within the scope

of th[e] Court's Order. These efforts include recent efforts that exhaust our ability to search. *To the extent we have found additional documents, I have produced them to defendants*, and I will *continue* to produce documents if I find *more*.

Pl.'s Aff. ¶ 6 (emphasis added). To the extent Sheinkopf's counsel was uncertain about the meaning of the above statement, they could have confirmed with plaintiff's counsel as to whether any additional production had been made prior to filing the Motion. They chose not to do so. Instead, the record before the Court suggests that Sheinkopf's counsel's representation about plaintiff's lack of productions was not made in good faith or to the "best of [Sheinkopf's counsel's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

Equally concerning, documents filed by plaintiff indicate that a paralegal employed by counsel for Oorah acknowledged receipt of the production on September 11, 2023, the next business day following the production deadline and four days before Sheinkopf filed her motion. (See Pl.'s Mot. at 2 (citing 93-4 at 2)). Evidently, Sheinkopf's counsel did not think it prudent to confer with co-counsel before racing to the courthouse steps. Moreover, after plaintiff informed Sheinkopf's counsel of the error on September 21, 2023 (see ECF No. 93-1), Sheinkopf did not file a letter advising the Court of her mistake. Indeed, despite filing several letters seeking extensions in the interim period, Sheinkopf's counsel did not acknowledge the mistake until October 20, 2023.

Sheinkopf's Motion and supporting papers also misrepresent the content of plaintiff's Affidavits. Sheinkopf twice asserts that plaintiff's Affidavit was noncompliant because it only detailed plaintiff's searches prior to the entry of the August Order. (See Mot. Sanctions at 2 (citing Pl.'s Aff. ¶ 5); Oct. 20th Ltr. at 2 (maintaining, even after receiving plaintiff's letter motion to the contrary, that "[a]lthough Plaintiff claims to have complied with the Court's Order

17

by submitting an affidavit, the examples of how she searched for emails all pre-date the Court's recent Order")). As noted above, however, even a cursory review of the originally filed Affidavit demonstrates that Sheinkopf's representation is not accurate. (See Pl.'s Aff. ¶¶ 6(B)–(C) (detailing collection efforts that took place after August 22, 2023)).

"[T]he filing of a motion for sanctions is itself subject to the requirements of Rule 11 and can lead to sanctions." JGIAP RH 160 LLC v. CRI Holding Corp., No. 21 CV 02489, 2023 WL 5979125, at *25 (E.D.N.Y. Aug. 16, 2023) (quoting Safe-Strap Co., Inc. v. Koala Corp., 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003)), report and recommendation adopted, No. 21 CV 02489, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023)). The facts set forth above, when combined with Sheinkopf's decision to seek the harshest discovery sanction available without so much as a "kernel of a theory" based in law or fact to support doing so, strongly suggest that Sheinkopf's Motion violates several aspects of Rule 11. McBurnie v. Rutledge, 646 Fed. Appx. 108, 113 (2d Cir. 2016); see also Fed. R. Civ. P. 11(b)(2) (prohibiting the presentation of legal arguments that lack a nonfrivolous basis in existing law); Fed. R. Civ. P. 11(b)(3) (prohibiting the presentation of factual contentions that lack evidentiary support); Fed. R. Civ. P. 11(b)(1) (prohibiting the pursuit of motion practice for an improper purpose).

Sheinkopf is advised that future transgressions of this nature may result in this Court ordering Sheinkopf and/or her counsel to show cause why they should not pay plaintiff's attorney's fees and expenses incurred in connection with litigating any such frivolous motions. Fed. R. Civ. P. 11(c)(3) (stating that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)"); Fed. R. Civ. P. 11(c)(1) (stating that courts may impose "an appropriate sanction on any

attorney, law firm, or party that violated [Rule 11(b)]").  At this time, however, the Court refrains from issuing any sanctions on either party.

    II.    <u>Protective Order</u>

        A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal cases. The rule allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevancy under Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case."  <u>Giacchetto v. Patchogue-Medford Union Free Sch. Dist.</u>, 293 F.R.D. 112, 114 (E.D.N.Y. May 6, 2013) (alteration in original) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).[15]

Nevertheless, while the scope of discovery is "broad," it is not "limitless."  <u>Fears v. Wilhelmina Model Agency, Inc.</u>, No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004).  The Rule requires courts to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Moreover, the Court is empowered to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  Such protective orders may only issue upon a showing of "good cause," <u>id.</u>, and the party seeking the order bears

---

[15] While Rule 26(b) was amended in 2015 to move the proportionality language to the provision defining the scope of discovery, "[t]he 2015 amendment[ ] . . . did not establish a new limit on discovery."  <u>ValveTech, Inc. v. Aerojet Rocketdyne, Inc.</u>, No. 17 CV 6788, 2021 WL 630910, at *2 (W.D.N.Y. Feb. 18, 2021); <u>see also</u> Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (explaining that "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality").

the burden of demonstrating that good cause exists.  See Melendez v. Primavera Meats. Inc., 270 F.R.D. 143, 144 (E.D.N.Y. 2010) (noting that where the requested discovery is "relevant, the burden is upon the party seeking nondisclosure or a protective order to show good cause" (quoting Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992))).

The determination of whether a protective order should issue is "highly fact-contingent," and "Rule 26(c) confers broad discretion on the trial court."  In re Zyprexa Injunction, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)).  The court also maintains broad discretion to determine "what degree of protection is required."  Melendez v. Primavera Meats. Inc., 270 F.R.D. at 144 (quoting Puling v. Gristede's Operating Corp., 266 F.R.D. 66, 72 (S.D.N.Y. 2010)).  The court must balance the moving party's burden of production against the interest of the nonmoving party in full discovery.  See Rofail v. United States, 227 F.R.D. 53, 55 (E.D.N.Y. 2005).  When issuing a protective order, courts are permitted to "specify[] terms, including time and place or the allocation of expenses, for the disclosure of discovery."  Fed. R. Civ. P. 26(c)(1)(B).  Courts may also "prescrib[e] a discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P. 26(c)(1)(C).

B.      Analysis

Plaintiff requests a protective order preventing her from having to search for, collect, and produce additional ESI.  (Pl.'s Mot. at 9–11; see also Oct. 19th Ltr. at 1).  While a protective order relieving plaintiff of any further obligation to produce additional ESI is not warranted, the Court concludes that certain limitations are appropriate in order to balance the burden imposed on plaintiff against Sheinkopf's interest in receiving additional communications between plaintiff and third parties.  See Rofail v. United States, 227 F.R.D. at 55.

Specifically, plaintiff is ORDERED, to the extent possible without the assistance of a vendor, to search and review any previously unproduced documents and communications that she has already collected, and to produce any responsive documents or communications by December 1, 2023. This production shall include any relevant, nonprivileged communications plaintiff has obtained directly from third parties as a result of the efforts described in Paragraph 7 of plaintiff's Affidavit.

To the extent that plaintiff has collected certain data, but is unable to process and/or cull it without assistance (see, e.g., Pl.'s Aff. ¶¶ 6(D); Pl.'s Am. Aff. ¶¶ 6(E)), the Court recognizes that Sheinkopf is entitled to responsive communications that may be found therein. Given the likely cumulative nature of the additional communications sought and the principle of proportionality that undergirds the discovery process, however, this Court will not require plaintiff to expend further time and resources processing the data and culling the resulting files herself. Nor would it be reasonable to simply order plaintiff to hand over the entirety of her data for processing and production to the defendants without plaintiff's counsel first reviewing the resulting communications for relevance and privilege. (See ECF No. 93-1 at 3 (offering to pay for a vendor that will "search through documents using keywords and then provide the documents to [the defendants]")). Plaintiff's suggestion that an e-discovery vendor engage in the process of determining which communications are relevant or contain attorney-client privilege information is equally infeasible (see Pl.'s Mot. at 11; ECF No. 94-4 at 2;), as that task is appropriately reserved for plaintiff's counsel.

In light of the issues identified above, Sheinkopf is given two options. If Sheinkopf still seeks communications found in the data that plaintiff is unable to process and/or cull without assistance, Sheinkopf must bear at least some of the cost involved in making those

communications available.  Specifically, plaintiff will be required to provide any data that she is unable to process and cull without assistance to an ESI vendor retained and paid for by Sheinkopf.  The ESI vendor will then process the data and narrow the field of files using search terms that consist of the names, emails, and phone numbers (to the extent they are known) of all individuals previously identified by Sheinkopf.  The vendor will then provide those files first to plaintiff's counsel, who shall review them for relevance and privilege.  Plaintiff shall then produce all relevant, nonprivileged communications to the defendants.[16]  The vendor shall be required to comply with the confidentiality order previously entered in this case.  (ECF No. 62).  Alternatively, Sheinkopf may forego further production of the requested communications.[17]  Irrespective of Sheinkopf's choice, plaintiff will not be required to further search for communications in response to the August Order, although plaintiff is reminded of her continuing obligation to produce additional responsive documents and communications should any be found.

<u>REMAINING DISCOVERY DEADLINES</u>

The Court has reviewed the parties competing status reports concerning the state of discovery and proposed revisions to the operative deadlines.  (<u>See</u> ECF Nos. 106, 107, 108).  The significant extensions requested by the parties are excessive; discovery in this case has dragged on long enough.  Given, however, that the parties anticipate requiring several non-party witness depositions and may also need to further amend some or all of the pleadings, the Court concludes that some extension is warranted.  It is therefore ORDERED that the parties shall comply with the following deadlines:

---

[16] To the extent plaintiff withholds any documents or communications on privilege grounds, her production must be accompanied by a privilege log.
[17] Defendants also remain free to serve third-party subpoenas on the individuals whose communications they seek.

- Date to complete plaintiff's continued deposition: December 8, 2023.[18]

- Date to complete independent medical examinations: January 22, 2024.

- Date to complete fact discovery: February 5, 2024.

- Date to move for leave to amend pleadings: February 5, 2024.

- Date of plaintiff's expert reports: February 19, 2024.

- Date of defendants' expert reports: March 20, 2024.

- Date to complete expert discovery: April 15, 2024.

- Date to file contemplated dispositive motions: May 15, 2024.

To the extent the parties believe that a modification of this schedule is appropriate with respect to a specific deadline, they may request such relief from the Court. The parties are advised, however, that the Court will not freely grant further extensions of the discovery schedule to accommodate sweeping inquests or petty squabbles.

<u>CONCLUSION</u>

In light of the above, (1) Oorah's Motion to Seal is GRANTED in part and DENIED in part; (2) Sheinkopf's Motion for Sanctions is DENIED; and (3) plaintiff's Motion for a Protective Order is GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated: Brooklyn, New York
         November 20, 2023

_Cheryl L. Pollak_
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

---

[18] This deadline will not be further extended to accommodate delay in retaining and receiving documents from an ESI vendor, should Sheinkopf elect to pursue that option. If Sheinkopf believes she needs to reopen plaintiff's deposition in light of subsequently produced documents, she may move for leave to do so at that time.