

**Carla Varriale-Barker**
(212) 651-7437
cvarriale@smsm.com

March 12, 2024

<u>**VIA ECF**</u>
Honorable Cheryl L. Pollak
Chief United States Magistrate Judge
United States District Court
Chambers Room 1230
Courtroom 13B – South
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      **RE:**   ***DORINA SOKOLOVSKY v. OORAH, INC., OORAH CATSKILL RETREAT LLC a/k/a "THE ZONE," and GITTIE SHEINKOPF***
            **Index No.: 1:20-CV-04116**
            <u>**SMSM File No.: 011010.000257**</u>

Dear Justice Pollak:

      We represent Defendants Oorah, Inc. and Oorah Catskill Retreat LLC a/k/a "The Zone," (the "Oorah Defendants") in the above-referenced matter. This correspondence is provided as a status report pursuant to Your Honor's Order, dated February 5, 2024. We note the deficiencies and anomalies in the production and request relief from the Court pursuant to FRCP 45 as detailed here.

      On February 5, 2024, Your Honor ordered Mr. Lovy to produce all correspondence between himself, or any agent of Za'akah, and Plaintiff Dorina Sokolovsky, Leah Forster, and/or Plaintiff's counsels, James Vernon & Weeks, PA and Tolmage Peskin Harris & Falick. *See* Order, **Exhibit "A"** annexed hereto. The Order was issued upon our request dated January 29, 2024. *See* correspondence accompanying subpoena, **Exhibit "B"** annexed hereto. Mr. Lovy's subpoena was emailed to all counsel before the subpoena was submitted without objection. *See,* correspondence to all counsel, **Exhibit "C"** annexed hereto. The subpoena was duly served upon Mr. Lovy on <u>February 15, 2024,</u> at Mr. Lovy's personal residence. *See* Affidavit of Service, **Exhibit "D"** annexed hereto.

      On February 13, 2024, we received correspondence from Plaintiff's counsel, for the first time purporting to represent Mr. Lovy and his organization Za'akah. *See* **Exhibit "E"** annexed

hereto.[1] Plaintiff's counsel stated he was retained in response to the So-Ordered Subpoena and that he would first obtain and review the responsive documents from Mr. Lovy and then provide them to the Oorah Defendants. The Oorah Defendants objected to this deviation from the Order and to Plaintiff's attorney's initial handling of the subpoenaed records. A copy of our correspondence by email is annexed hereto as **Exhibit "H."** We did agree that Mr. Lovy could redact the names of any third parties who were not involved in this matter before they were provided. Despite my objections, Mr. James received, reviewed, and produced the enclosed documents on February 26, 2024, without further explanation. *See,* correspondence and document production, **Exhibit "I"** annexed hereto. Our requests for a privilege log were not responded to until March 10, 2024. *See*, correspondence, **Exhibit "J"** annexed hereto. For the reasons discussed here, we believe the production and the putative privilege log are insufficient.

The documents that Plaintiff's attorneys produced include the 21 documents that can be characterized as snippets. Mr. Lovy's production consisted of sixteen (16) dated screenshots of direct messages between Ariella Goldberg-Kay and Plaintiff Dorina Sokolovsky, three (3) screenshots of direct messages between Leah Forster and Ariella Goldberg-Kay, and two (2) printouts of email correspondence from Asher Lovy to Chrisopher Seleski, Leander James, and Stephan Peskin. We believe Ms. Goldberg-Kay operates the Za'akah social media accounts and is featured in the organization's posts, including ones about this case.

The production contains messages from January 24, 2020, to January 29, 2020 whereby Mr. Lovy requests Mr. James to attend a "livestream" co-hosted by non-party witness Leah Forster[2] to raise awareness of the Child Victims Act. The email chain produced by Mr. Lovy ends with a suggestion provided by Mr. James for Chris Seleski to participate in the "livestream" virtually on January 29, 2020. It is not clear I the full conversation between Mr. Lovy and the Plaintiff's counsel was omitted. Furthermore, the enclosed direct messages between non-party Leah Forster and Ariella Goldberg-Kay are undated and appear to be cut off before the end of the

---

[1] This was the first time the Oorah Defendants learned that Plaintiff's counsel has been "pro-bono counsel", or any other counsel, to Mr. Lovy and his organization, Za'akah. Much to our surprise, Mr. Lovy and his organization had been posting commentary about this case and the defendants. He was recently identified by non-party witness Leah Forster, the impetus for the lawsuit, during her deposition as the person she consulted for legal representation for Plaintiff. As the Oorah Defendants noted when they submitted the subpoena to Your Honor, we were aware that Mr. Lovy and his organization, Za'akah, have a social media presence and that they had posted videos to their TikTok page that reference public documents and provided commentary on this case, including a post stating the Oorah Defendants were "purposefully evading deposition subpoenas" via a TikTok video posted on September 28, 2022. *See,* the complete videos and social media posts by Mr. Lovy and Za'akah annexed here to as **Exhibit "F"** annexed hereto. This video was posted seven (7) days after Plaintiff filed her reply to Oorah Defendants' letter pertaining to delays in conducting depositions and three (3) weeks after Plaintiff filed her initial letter. Furthermore, Mr. Lovy posted on his personal Facebook page on May 24, 2021, criticizing co-defendant's fundraiser to defray her legal expenses and then celebrated the removal of the fundraiser after The Chesed Fund received several complaints from his and Za'akah's followers. *See,* Facebook Post, **Exhibit "G."** The tone and content of these communications speak for themselves. Some of these communications, upon information and belief, were made after Mr. Lovy referred Leah Forster and Plaintiff to Plaintiff's counsel. We believe that there may be some coordination among Mr. Lovy, Ms. Forster, and/or Plaintiff's counsels which have not yet been produced or was withheld because of a "privilege."

[2] The Oorah Defendants have filed a separate motion regarding Ms. Forster's failure to respond to a So-Ordered subpoena, which has delayed and impeded the completion of her deposition.

Honorable Cheryl L. Pollak
March 12, 2024
Page **3** of **5**

conversation as indicated by the down arrow at the end of the second screenshot. This arrow appears in the chat when there are additional messages below what the user is viewing on their screen. No call logs of correspondence were provided by Mr. Lovy in his response, although they were requested in the subpoena, nor was a privilege log provided for any materials allegedly withheld by Mr. James' office aside from the conclusory one appended to an email on March 10, 2024.[3]

At this time of the disclosure, Mr. James only asserted confidentiality over the name of an unrelated abuse survivor included in the email correspondence between Mr. James and Mr. Lovy pertaining to Mr. James' appearance on Mr. Lovy's "livestream." Mr. James confirmed on February 26, 2024, that he was not withholding any materials provided by Mr. Lovy (except for the name of the abuse survivor).

The recent testimony of Ms. Forster contradicted the assertions that the complete production of all materials responsive to the So-Ordered Subpoena were provided to the Oorah Defendants. For example, on December 20, 2023, Ms. Forster testified that she contacted Mr. Lovy who referred her to Plaintiff's counsel and that Mr. Lovy contacted Plaintiff's counsel on her behalf. *See,* portions of Forster Dep. 84:9-85:13, 90, 176-179. **Exhibit "K"** annexed hereto. Ms. Forster also testified that she forwarded two documents of email correspondence between Plaintiff and Gittie Sheinkopf to Mr. Lovy and that Mr. Lovy explained to Ms. Forster that the correspondence is indicative of "classic grooming" upon receipt of the emails. *See,* portions of Forster Dep. **Exhibit "K"**. 86:18-87:25. These communications were not produced and are not privileged. Finally, on March 19, 2018, Ms. Forster messaged the videographer Emmanuelle Glazier who made Plaintiff's video about the alleged abuse, which was published on May 25, 2018, that she has "people that will help [the video] go viral." *See,* WhatsApp Messages, **Exhibit "L"** annexed hereto. Per our investigation, Mr. Lovy proceeded to repost the video on his Facebook page the day it was published. **Exhibit "M"** annexed hereto. These communications, too, would not be privileged. This testimony and the exhibits enclosed in this report demonstrate Mr. Lovy's intimate involvement in the matter even before the initial summons was filed.

---

[3] Putting aside that it was provided after the response was required, the "privilege log" provided on March 10, 2024, is insufficient based on the local rules. It provides little description of the documents or the basis for asserting privilege. The Oorah Defendants believe an updated and detailed log should be provided by Mr. Lovy. For example, in *273 Lee Ave. Tenants Ass'n v. Steinmetz, 2018 U.S. Dist. LEXIS 235337*, Your Honor previously required a party to revise their privilege log to include the author and recipient for each document withheld, as well as all redacted documents on the new log. This case confirms that a privilege log is necessary for communications with non-party entities:

> "While this Order only addresses the parties' privilege logs as opposed to the privilege logs submitted on behalf of the non-party entities (see discussion supra at 2), the parties are advised that the same guidelines described here will dictate how the Court assesses the second set of documents and the privilege logs on behalf of the non-party entities. For example, if plaintiffs wish to assert a privilege on behalf of non-party Los Sures regarding meeting notes for a meeting at which lawyers were present and the case was discussed, they must specify the contents of the document and the specific rationales for asserting privilege as to it, or the Court will consider any potential claim of privilege waived."

Honorable Cheryl L. Pollak
March 12, 2024
Page **4** of **5**

Assuming the claims of attorney-client privilege are proper, it is well established that the party invoking the privilege has the burden of establishing the existence of an attorney-client privilege, and that "the asserted holder of the privilege is or sought to become a client" (*Wultz v. Bank of China, 979 F. supp. 2d 479*). *United States Postal Serv. v. Phelps Dodge Ref. Corp., 852 F. Supp. 156* clarifies that privilege attaches when: 1) legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected from disclosure. Moreover, communications between an attorney and third-party are not inherently shielded by privilege and should be more completely explained here.

We believe the disclosure in response to the So-Ordered Subpoena is incomplete and has caused delay and prejudice to the Oorah Defendants. Mr. Lovy's failure to provide a fulsome response has prejudiced the Oorah Defendants because the response was provided only two (2) days before the court ordered paper discovery must be completed. As demonstrated by the posts enclosed here, Mr. Lovy's and Za'akah's posts have also prejudiced the Oorah Defendants and co-defendants through casting them in an unfavorable light, going so far as to infer on May 25, 2018, that co-defendant (a social worker) is a threat to the community because "she may be counseling vulnerable children, [giving] her a ready pool of victims to abuse." The production has prevented the Oorah Defendants from confirming the scope of responsive documents prior to the deadline. In order to obtain a more fulsome response, the Oorah Defendants have now provided the enclosed subpoena to Plaintiff's counsel seeking the deposition of Mr. Lovy. *See* subpoena **Exhibit "N"** annexed hereto.

The Oorah Defendants have incurred additional expenses to enforce their subpoena, including assessing the claims of privilege, if any. They have spent time analyzing Mr. Lovy's incomplete production and cross-referencing it with testimony and social media posts - cost which would not have been incurred if Mr. Lovy provided a fulsome response. The deposition of Mr. Lovy is required, and it is requested that the time to complete his deposition include a reasonable period after the completion of his production to supplement the Oorah Defendants' paper discovery responses if needed.

Therefore, the Oorah Defendants request that pursuant to the Order, the appearance of Mr. Lovy is required on March 20, 2024, in order to resolve these issues and require Plaintiff's counsel to include a privilege log, as required under the local rules. The Oorah Defendants further request the reimbursement of their reasonable attorney's fees in seeking this relief. The Oorah Defendants also request additional time to supplement their discovery responses if needed based on a further production and Mr. Lovy's deposition.

Respectfully submitted,

*/s/ Carla Varriale-Barker*
Carla Varriale-Barker, Esq.

Enclosures: as stated

Honorable Cheryl L. Pollak
March 12, 2024
Page **5** of **5**


cc (via ECF):
Leander L. James, IV, Esq.   ljames@jvwlaw.net
Aaron Twersky, Esq.          atwersky@twerskylaw.com