

**JAMES, VERNON & WEEKS, PA**
*Helping people solve problems®*

LEANDER L. JAMES
CRAIG K. VERNON
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Toll Free Telephone:  (888)-667-0683
Office Telephone: (208) 667-0683
ljames@jvwlaw.net
cvernon@jvwlaw.net

**TOLMAGE, PESKIN, HARRIS, FALICK**
STEPHAN H. PESKIN
MATTHEW C. LOMBARDI
20 VESEY STREET
NEW YORK, NY  10007
Toll Free Telephone:  (877) 298-3201
Office Telephone:  (212) 964-1390
peskin@tolmagepeskinlaw.com
lombardi@tomagepeskinlaw.com

March 21, 2024

Hon. Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 13B-South
Brooklyn, New York 11201

     Re:  Sokolovsky v. Oorah, Inc. et al.
          Case No. 1:20-cv-04116

Dear Honorable Judge Pollak:

In an abundance of caution, I am re-submitting this response to Document #123 on behalf of my client, Asher Lovy,[1] director of a non-profit, ZA'AKAH, so that it will not be lost within Mr. Lovy's previously-filed Motion to Quash Subpoena. Mr. Lovy incorporates by reference the exhibits submitted in support of his Motion to Quash Subpoena, Dkts. 126-1 through 126-3.

Based upon their "belief" that Mr. Lovy did not fully respond to their first subpoena, Dkt. 123-1, Exhibit A, Oorah Defendants accuse Mr. Lovy of noncompliance and seek a host of unwarranted and punitive remedies, including attorney's fees and costs. Defendants' belief is unjustified and wrong, and they are entitled to no remedies.

### A.  FACTS

In 2016, Mr. Lovy assumed the directorship of an unincorporated organization called ZA'AKAH, a sponsored project of SNAP [Survivor's Network of Those Abused by Priests, a 501(3)(c)].[2] Mr. Lovy contracts with SNAP to carry out that organization's charitable work with others under the name ZA'AKAH.  Mr. Lovy and his colleagues at ZA'AKAH raise awareness about child sexual abuse, participate in educational events and support survivors of child sexual abuse in the Orthodox Jewish community.  Mr. Lovy and his colleagues at ZA'AKAH help many sexual abuse survivors in New York State and in the Orthodox Jewish Community.  They know the names of abuse

---

[1] Plaintiff's Counsel jointly represents Mr. Lovy, ZA'AKAH and Plaintiff, as further explained herein.

[2] SNAP is an Illinois nonprofit corporation qualified as exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code ("IRC") and classified as a public charity under IRC Sections 509(a)(1) and 170(b)(1)(A)(vi).

survivors, details of their abuse, details of their mental health treatment, information about their legal representation, the identity of accused perpetrators, details about their alleged abuses and many more categories of confidential information.

Mr. Lovy is the recipient of confidential information in his work, including disclosures by child sexual abuse victims in the Jewish Orthodox community. He utilizes trade secrets, confidential research, development, and commercial information in his non-profit work. He networks with other individuals and organizations who assist sexual abuse victims. His communications with these individuals and organizations involve his trade secrets, confidential information of abuse victims and confidential information of the individuals and organizations with whom he networks.

Mr. Lovy has been the target of threats, retaliation and intimidation within the Orthodox Jewish community by known sexual abusers, accused sexual abusers, family members of abusers and accused abusers, and others in the Orthodox Jewish community protective of abusers and accused abusers. Similarly, his colleagues and the abuse survivors he works with have been the targets of threats, retaliation and intimidation. Some of the abuse survivors he helps have been threatened to recant their disclosure of abuse or face retaliatory consequences.

Plaintiff's Counsel has represented Mr. Lovy since 2019 in many aspects of his work, including legal research; investigation; defense of retaliation claims, threats and intimidation; protection of trade secrets and confidential information; and in other legal matters. As such, Plaintiff's Counsel and Mr. Lovy have exchanged hundreds of communications by email, correspondence and phone involving legal advice and representation, the vast majority involving confidential information of parties unrelated to the case at bar.

In his capacity with ZA'AKAH and SNAP, Mr. Lovy counseled Plaintiff as an abuse survivor. Defendants knew about ZA'AKAH prior to May 24, 2023, and knew of Mr. Lovy's and ZA'AKAH's involvement with Plaintiff and Leah Forster at least as early as December 20, 2023, when witness Leah Forester testified to Mr. Lovy's and ZA'AKAH's involvement with Plaintiff.

On February 5, 2024,[3] Oorah Defendants served Mr. Asher Lovy, through his Counsel, Leander L. James, a "so-ordered" subpoena requiring Mr. Lovy to:

> Obtain any and all correspondence from Mr. Lovy and/or anyone representing his organization ZA'AKAH with either Plaintiff, Dorina Sokolovsky, Leah Forster, and/or plaintiff's counsels, JAMES VERNON & WEEKS, PA, or TOLMAGE PESKIN HARRIS & FALICK, including WhatsApp Messages, text messages, email communications, direct messages on all social medial platforms, call logs, and/or all other communications from 2012 to present.

Oorah Defendants' Dkt. 123-1, Exhibit A.

---

[3] The subpoena was signed on January 29, 2024. Mr. Lovy's Counsel received it on February 5, 2024.

Mr. Lovy timely responded with the production of documents and data falling within the scope of said subpoena. These included two emails, two PDFs and 19 chats.[4] He has subsequently searched for responsive data/documents and produced what he can find with his technical abilities, resources and access to records. For example, see Dkt. 126-3 and Dkt. 126-r submitted with Mr. Lovy's Motion to Quash, Dkt. 126. Mr. Lovy is not an e-discovery vendor, and he has scant financial resources as a non-profit worker.

I. OORAH DEFENDANTS IMPROPERLY SUBPOENA DATA AND DOCUMENTS OF THIRD-PARTIES.

Oorah Defendants' subpoena is directed to "ASHER LOVY," not ZA'AKAH or SNAP. Dkt. 123-1, Exhibit A. Yet, in their "Exhibit A," Defendants demand Mr. Lovy produce documents and data that are the property of ZA'AKAH, SNAP and others. For example, Defendants demand copies of social media posts, "including on behalf of Zaa'kah [sic]." Dkt. 123-1, Exhibit A, item 2. They demand "copies of your or Zaa'kah's communications including direct messages, texts, social media posts." Dkt. 123-1, Exhibit A, item 3.

Other individuals working under the name ZA'AKAH as contractors with SNAP work with survivors, communicate with survivors, correspond with them, create posts, respond to posts, etc. Oorah Defendants' subpoena would force Mr. Lovy to produce their work product.

Indeed, Mr. Lovy is not bound to produce ZA'AKAH's or SNAP's documents or data. Oorah Defendants do not seem to appreciate this distinction. By demanding Mr. Lovy produce documents, data, trade secrets and other information that belongs to ZA'AKAH or SNAP, Oorah Defendants are demanding production of confidential information and intellectual property of others. Were Mr. Lovy to comply, he would be subjected to potential liability to ZA'AKAH, SNAP, others working within these organizations and the individuals whose confidential information he would disclose.

If Defendants want information from ZA'AKAH's or SNAP, they must issue subpoenas to the proper parties for that information.

II. REPRESENTATION OF MR. LOVY AND ZA'AKAH.

Oorah Defendants' submission reeks of unjustified cynicism and innuendo. For example, Oorah Defendants state, "we received correspondence from Plaintiff's counsel, for the first time *purporting*[5] to represent Mr. Lovy and his organization ZA'AKAH." Dkt. 123, pg. 1. Plaintiff's

---

[4] Mr. Lovy additionally provided a privilege log listing documents withheld under the attorney-client privilege, largely relating to communications between him and his attorney about Oorah's subpoena, and including non-relevant communications.

[5] "Purporting" is defined as: "appear or claim to be or do something, especially falsely."
https://www.google.com/search?q=purporting+definition&rlz=1C1GIVA_enUS986US986&oq=purporting+d&gs_l crp=EgZjaHJvbWUqBwgAEAAYgAQyBwgAEAAYgAQyBggBEEUYOTIICAIQABgWGB4yDAgDEAAYChgP GBYYHjIKCAQQABgPGBYYHjIKCAUQABgPGBYYHjIKCAYQABgPGBYYHjIKCAcQABgPGBYYHjIKCA gQABgPGBYYHjIKCAkQABgPGBYYHqgCALACAA&sourceid=chrome&ie=UTF-8

Counsel does not "purport" to represent Mr. Lovy and ZA'AKAH. He does and has represented them for four years. He first met Mr. Lovy when he was asked by another non-profit organization to assist in drafting New York's Child Victims Act and to advise the New York Legislature about that Act, based upon his experience with similar legislation in other states. He encountered Mr. Lovy at events such as the John Jay College of Law educational panel on the CVA, where he was asked to be a panelist. Shortly thereafter, Plaintiff's counsel began representing Mr. Lovy and ZA'AKAH on a pro bono basis. There is nothing sinister or subversive for an attorney to provide pro bono assistance to a non-profit or a non-profit worker. Indeed New York Rule of Professional Conduct 6.1 provides in pertinent part:

> As part of the effort to ensure that New Yorkers of low-income and modest means have access to legal services, Rule 6.1 and Rule 6.5 of the Rules of Professional Conduct have been promulgated by the Appellate Divisions of the Supreme Court to encourage the performance of pro bono work by attorneys.

Rule 6.1 strongly encourages attorneys to provide at least 50 hours of pro bono legal services each year and to support financially the work of organizations that provide such services. *Id*.

III. MR. LOVY'S COMPLIANCE WITH THE FIRST SUBPOENA

Oorah Defendants highlight that Mr. Lovy did not object to the first subpoena and complain at length that Mr. Lovy responded to the subpoena by producing documents through his attorney, who reviewed them for privilege, confidentiality and non-responsiveness. Dkt 123, pg. 2. Since Defendants' first subpoena was narrow, asking only for limited "communications," Mr. Lovy did not want to get into an argument with Defendants over it by objecting (which in hindsight was perhaps naïve, because Defendants seem bent on fighting over everything, including non-issues in the instant motion).

As for Mr. Lovy's attorney reviewing his production, there is nothing sinister about a client under subpoena producing documents through his attorney who reviews them for privilege, confidentiality and non-responsiveness. In fact, that is the proper procedure for a represented person; they should communicate through their attorney and not directly with the party issuing the subpoena. Oorah Defendant's Counsel would have Mr. Lovy communicate directly with her by producing the documents directly to her and not his attorney, in violation of New York Rule of Professional Conduct 4.2(a) regarding communications with represented persons.[6]

Further, and ironically, Mr. Lovy's attorney review caught the confidential name of an abuse survivor. He informed Oorah Defendant's about this and they agreed that the name should be redacted from the documents. Had Mr. Lovy produced the documents directly to Oorah Defendants, as they argue he should have, the name of this innocent, non-party abuse victim would have been disclosed, which could have been very damaging to the non-party.

---

[6] "In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law." Rules of Prof. Conduct [22 NYCRR 1200.0] rule 4.2(a).

IV. MR. LOVY'S PRODUCTION OF A PRIVILEGE LOG

Oorah Defendants next complain they did not receive a privilege log until March 10, 2024. Dkt. 123, pg. 2. What's the beef? Lovy produced a privilege log identifying communications between him and his attorney about Oorah Defendant's subpoena. Defendants have it. In his log, Mr. Lovy even listed non-responsive communications with his attorney that were not at all relevant to this action, which is not required under Fed. R. Civ. Pro. 45.

Inexplicably, Oorah Defendants go on to complain the privilege log is incomplete when it contains all the necessary information. The privilege log provided precisely the information required by the federal and local rules, including the person asserting the privilege, nature of the privilege, type of document, general subject matter, date of the document, author of the document, addresses of the document and other recipients. Dkt. 123-3, Exh. J. See also Local Civil Rule 26.2.

V. OORAH DEFENDANTS COMPLAINTS ABOUT SCREENSHOTS

Oorah Defendants complain at length that Mr. Lovy produced screenshots. Mr. Lovy is not an e-discovery vendor. He provided the data and documents in a reasonable format consistent with his technical abilities. If Defendants want to ask about the dates of these "snippets" or want to see them firsthand, they can do so at his deposition.

Oorah Defendants again complain that Mr. Lovy produced the documents to his attorney who then produced them in their entirety to Defendants (except privileged documents and the name of a third party redacted as agreed to by Oorah Defendants). Without a basis in fact, Oorah Defendants imply Mr. Lovy or his counsel altered the documents. Such implication is improper. They did not.

VI. BASED ON MS. FORSTER'S TESTIMONY, OORAH DEFENDANTS IMPROPERLY ASSUME MR. LOVY IS HIDING DOCUMENTS

Oorah Defendants complain at length that there must be documents in Mr. Lovy's possession that he hasn't produced because the "recent testimony of Ms. Forster contradicted" his production. Dkt. 123, pg. 3. Mr. Lovy carefully read Defendants' first subpoena and produced what he could find in response thereto. Defendants accuse Mr. Lovy of defying the subpoena and other improper conduct. Such accusations are unfounded and unjustified. There are other reasonable explanations for the perceived "contradiction." Mr. Lovy has gone through three phones and two providers and was therefore unable to access his old WhatsApp messages. See Dkt. 126-3. Defendants may have misunderstood Ms. Forster's testimony. Ms. Forester's testimony may be inaccurate, or the documents and data may have long since been deleted. The fact of the matter is that Mr. Lovy produced what he could find in response to the subpoena. There is no grand conspiracy on his part to hide documents. Oorah Defendants' refusal to accept that Mr. Lovy can find no more responsive documents is not a basis to punish Mr. Lovy.

VII. REQUEST FOR UNWARRANTED AND PUNITIVE REMEDIES IN THE FORM OF AN AWARD OF ATTORNEY'S FEES AND COSTS

Oorah Defendants conclude by seeking unwarranted remedies. Dkt. 123, pg. 5. They demand an order for a privilege log where one has already been produced. *Id*. They request Mr. Lovy's "appearance" at deposition when Mr. Lovy has not refused to appear for a deposition. They seek additional time to supplement their discovery responses when they and all parties are under an ongoing duty to supplement discovery anyway. Defendants are fighting over non-issues. There is no basis in fact or law to demand Mr. Lovy produce another privilege log, especially where Defendants do not identify any deficiency in the log produced.[7]

There is no reason for the Court to order more time for Defendants to supplement their discovery because all parties are already under a duty to supplement discovery under the Rules of Civil Procedure. There is no basis in law or fact to sanction Mr. Lovy with an award of attorney's fees and costs, nor have Oorah Defendant's cited any authority for the same. If anyone should be awarded fees and costs, it should be Mr. Lovy under Fed. R. Civ. P. 11 for having to respond to a motion without a basis in fact or, to some degree, law.

B. CONCLUSION

Defendants have no basis in fact to support their Motion. Mr. Lovy complied with Defendants' subpoena, Dkt. 123-1, Exhibit A. Defendants' Motion should be denied.
.

        Respectfully submitted,

        JAMES, VERNON & WEEKS, P.A.
        TOLMAGE, PESKIN, HARRIS, FALICK

          /s/ Leander L. James

    By: _____
        Leander L. James

---

[7] Defendants state, "we believe the production and the putative privilege log are insufficient," then do not state any basis in fact for their belief. Dkt. 123, page 2. Later, in a footnote, Defendants note this Court ordered a party to revise their log to include "the author and recipient for each document withheld." Yet, Mr. Lovy provided that information in his log. See Dkt. 123, Dkt. 123-10, Exh. J, email of March 10, 2024, at 6:56 p.m.