

**Carla Varriale-Barker**
(212) 651-7437
cvarriale@smsm.com

March 25, 2024

**VIA ECF**
Honorable Cheryl L. Pollak
Chief United States Magistrate Judge
United States District Court
Chambers Room 1230
Courtroom 13B – South
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      **RE:** ***DORINA SOKOLOVSKY v. OORAH, INC., OORAH CATSKILL RETREAT LLC a/k/a "THE ZONE," and GITTIE SHEINKOPF***
           **Index No.: 1:20-CV-04116**
           **SMSM File No.: 011010.000257**

Dear Justice Pollak:

    Oorah, Inc. and Oorah Catskill Retreat LLC a/k/a "The Zone," (the "Oorah Defendants") submit the following in opposition to the motion to quash the Subpoena Duces Tecum upon non-party witness, Asher Lovy dated March 8, 2024 (the "March 8 Subpoena") and for a protective order pursuant to Fed. R. Civ. Pro. 26(b). annexed to Dkt. 126 Plaintiff's/Mr. Lovy's attorney also writes in response to the Oorah Defendants' required report and letter motion. Dkt. 123. For the reasons set forth here, Plaintiff's/Mr. Lovy's motion(s) should be denied, and the Oorah Defendants' requested relief be granted, including the scheduling of Mr. Lovy's deposition on a date certain that is agreeable to all parties.

    **The Motion To Quash**

    The motion to quash the March 8 Subpoena should be denied.

    At the outset, there is no privilege regarding Mr. Lovy's communications with Plaintiff, Plaintiff's counsel or Ms. Forster. Mr. Lovy's organization, ZA'AKAH, states on its website, www.zaakah.org, that it does not directly provide any victim services and that it refers people to

others based on their needs.[1] According to its website, ZA'AKAH is a fiscally supported program of SNAP (an acronym for "Survivors Network of Those Abused By Priests"). The March 8 Subpoena does not seek confidential information or privileged information, particularly since the Oorah Defendants have restricted the scope of their requests to this matter, agreed to redactions of third parties' names, and the parties have already entered into a Confidentiality Agreement. *See* Dkt. 62.

The procedural history is relevant to Mr. Lovy's motions. On February 5, 2024, Your Honor ordered Mr. Lovy to produce all correspondence between himself, or any agent of ZA'AKAH, and Plaintiff Dorina Sokolovsky, Leah Forster, and/or Plaintiff's counsels, James Vernon & Weeks, PA and Tolmage Peskin Harris & Falick under the penalty of sanctions for non-compliance. *See*. Order, Dkt. 117.[2] The Order was issued upon the Oorah Defendants' request dated January 29, 2024. *See* Dkt. 116. Mr. Lovy's So-Ordered Subpoena was then emailed to <u>all counsel</u> before it was submitted to the Court. *See* Dkt. 123-3.[3] The information sought is similar to (and already requires production of documents and information on behalf of ZA'AKAH) is foundational to what is sought in the March 8,Subpoena.Thus, assuming Plaintiff's/Mr. Lovy's counsel possesses standing to object the subpoena(s) at this late juncture, he has waived objections about the production of all correspondence between himself, or any agent of ZA'AKAH, and Plaintiff Dorina Sokolovsky, Leah Forster, and/or Plaintiff's counsels, James Vernon & Weeks, PA and Tolmage Peskin Harris & Falick because he failed to object to the same at any time before the initial subpoena for documents was so-ordered.

It is well-established that the party claiming the attorney-client privilege has the burden to establish that the privilege is applicable under the circumstances. See *Von Bulow v. Von Bulow*, 811 F.2d 136, 144 (2d Cir.) [*6], cert. denied, 481 U.S. 1015, 107 S. Ct. 1891, 95 L. Ed. 2d 498 (1987); *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988). The attorney-client privilege attaches:(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Plaintiff's/Mr. Lovy's counsel identified himself as Mr. Lovy's attorney for the first time on February 13, 2024. He did so before the subpoena was personally served upon Mr. Lovy. It makes little sense to argue that he contacted Mr. Lovy when he received the subpoena, because he had the same relationship with him on January 27, 2024, when the initial subpoena was submitted to all parties before it was submitted to Your Honor yet said nothing about representing Mr. Lovy

---

[1] In this case, its service consisted of connecting Plaintiff and non-party Ms. Forster to Plaintiff's attorney and to coordinating publicity about Plaintiff's allegations and lawsuit.

[2] The items sought were any and all correspondence from Mr. Lovy and/or anyone representing his organization ZA'AKAH with either Plaintiff, Dorina Sokolovsky, Leah Forster and/or Plaintiff's counsels including WhatsApp messages, text, messages, email communications, direct messages on all social media platform, call logs and/or all communications from 2012 to the present. *See* Dkt 116 and 117.

[3] There was no objection to the scope or content of initial subpoena or indication that Plaintiff's counsel was also Mr. Lovy's counsel at any time prior to February 13, 2024. Therefore, the Oorah Defendants did not serve Mr. James "as Mr. Lovy's counsel" as he claims, instead he was served by personal service, at his residence, as per the Affidavit of Service. *See* Dkt. 123-4.

or about the subpoena itself. Plaintiff's/Mr. Lovy's attorney bears the burden of establishing the attorney/client relationship and when it attached regarding this case, and he has not done so here. Not can he avoid the waiver of any objections regarding the So-Ordered Subpoena at this juncture.

Plaintiff's/Mr. Lovy's counsel's insistence that he first review and cull the responsive documents obtained from Mr. Lovy was a deviation from the Order. The Oorah Defendants objected the same to no avail. There was no dispute that Mr. Lovy could redact the names of any third parties who were not involved in this matter before they were provided,[4] so there is no genuine issue concern the identities of third parties, or their information being disclosed.

Putting aside Plaintiff's/Mr. Lovy's counsel's protestations, there are no examples of confidential information, trade secrets, confidential research, development, and confidential information in his non-profit work whatsoever that were provided to support the motions to quash or for a protective order regarding the March 8 Subpoena. To the extent there is a genuine concern, a Confidentiality Agreement is already in place Thus, there is an absence of good cause shown to quash the March 8, Subpoena regarding unidentified and non-specific claims of confidential information, trade secrets, confidential research, development, and confidential information in his non-profit work.

Similarly, Plaintiff's/Mr. Lovy's counsel's straw person arguments about vague threats, retaliation, and intimidation towards Mr. Lovy or his organization, are nothing more than empty, straw person arguments. There is no evidence whatsoever that the Oorah Defendants have threatened, retaliated against or intimidated him or anyone connected to this case, at any time. The opposite is true: if there has been bullying and intimidation, it has been on the part of Mr. Lovy and his organization through an aggressive social media campaign directed against the defendants in an effort to shame and humiliate them and to seek an unfair advantage in this case. *See* Dkt. 123, 124. Consequently, these are not genuine concerns or a showing of good cause to quash the March 8 Subpoena or to otherwise grant a protective order.

The March 8 Subpoena and request for Mr. Lovy's deposition annexed to Dkt. 126 were occasioned by and related to Mr. Lovy's initial response to this Court's initial So-Ordered Subpoena and his subsequent production on March 18, 2024 whereby the Oorah Defendants distilled the scope of his involvement as a fact witnesses and someone who Plaintiff discussed the alleged abuse with (and the Oorah Defendants' alleged responsibility) before she commenced this action.[5] The interconnected web among Mr. Lovy and his organization, non-party witness Leah Forster, and Plaintiff's counsel was crystallized by his production, as limited as it was, in response

---

[4] The parties have a Confidentiality Agreement in place to protect, among other things, confidential information. *See* Dkt. 62.

[5] As discussed in Dkt. 123, although the Oorah Defendants became aware of Tik Tok or social media posts from ZA'AKAH involving the docket, it was only upon the deposition of Ms. Forster that the Oorah Defendants learned that she coordinated with Mr. Lovy and ZA'AKAH to find a lawyer to assist Plaintiff and that she communicated with him by WhatsApp, Instagram and Facebook about Plaintiff's case and that they have been guests on each other's podcasts. See Dkt. 124-2 and Dkt. 124-4. Although she was asked several times to produce these documents, she did not and her deposition has not been completed. See Dkt.124-2 and Dkt. 124-4. However, Mr. Lovy has produced some of their exchange, **Exhibit "A"** and Dkt. 123-9 annexed hereto and this is what led to the subpoena for his deposition.

to the initial So-Ordered Subpoena. He has now been identified as a fact witness by the Oorah Defendants in their discovery responses and his deposition is material and necessary required to fill in the gaps in his production and to explore what Plaintiff and Ms. Forster revealed to him about the alleged abuse and the defendants' respective purported responsibility for the same.

The complete disclosure after March 18, 2024, and the correspondence regarding the same are annexed for Your Honor's review hereto as **Exhibit "A**."

To borrow a phrase from Plaintiff's/ Mr. Lovy's counsel here is the "beef" based upon that production:

The production consisted of messages between Asher Lovy, Plaintiff, and Ms. Forster. On May 25, 2018, Mr. Lovy initiated conversation on Facebook Messenger with Plaintiff after watching Plaintiff's YouTube video detailing the alleged abuse, she allegedly experienced. Mr. Lovy asked Plaintiff if the Oorah Defendants were aware of the alleged abuse and asked Plaintiff's permission to post the following statement: "Oorah forbade Gitty from seeing Leah anymore, although it's unclear what details they knew about the abuse." Plaintiff clarified that the Oorah Defendants didn't know anything about the physical aspects and limited information about the emotional and mental aspects of the abuse. Plaintiff continued to confirm that the Oorah Defendants knew nothing of the alleged physical abuse between herself and co-defendant Gittie Sheinkopf and that Gittie lied to the Oorah Defendants after they forbade her from contacting Plaintiff. Plaintiff admitted that she didn't know whether to involve the Oorah Defendants further in the matter because they were "good to me for 10 years, did a lot for me…I don't want to drag them down." However, Mr. Lovy explained the importance of establishing that the Oorah Defendants had notice of the alleged abuse to prove their negligence claim. Finally, on February 15, 2019, Mr. Lovy's messaged Plaintiff to inform her of the passage of the Child Victims Act (the "CVA") and recommended she contact Plaintiff's/Mr. Lovy's counsel to discuss the merits of her case. On March 15, 2019, Plaintiff responded to Mr. Lovy and confirmed that she retained Mr. James to represent her in this action.

**Summary of Messages with Plaintiff Sokolovsky:**

On February 15, 2019, Mr. Lovy messaged Plaintiff about the passing of the CVA and recommends she reach out to Plaintiff's attorney. On March 15, 2019, she informed Mr. Lovy she retained her attorney for the case. The last date of conversation is March 16, 2019. Lovy asked her if the Oorah Defendants were aware of the abuse. Sokolovsky said they were to an extent, and that Gittie was forbidden from seeing her, but that Gittie kept in touch with her anyways. Plaintiff then says that the Oorah Defendants knew "something unhealthy was going on" but that they didn't know details of the abuse. Lovy advised her it is important to establish the Oorah Defendants' s negligence and Plaintiff clarified that she doesn't think they knew it was abuse because they didn't know anything about the physical aspects and had limited information about the emotional and mental aspects of the abuse.

Mr. Lovy asked Plaintiff's permission to post the following statement: "Oorah forbade Gitty from seeing Leah anymore, although it's unclear what details they knew about the

abuse." Sokolovsky again clarified that Gittie was told by Oorah that she would be fired if she saw her again, but that "lasted for a second." Plaintiff stated that Gittie continued to see Sokolovsky after she was instructed by the Oorah Defendants not to – and that Gittie continued to lie to Oorah. Sokolovsky admitted that she didn't know how much she was to involve Oorah in the matter because they were "good to me for 10 years, did a lot for me…I don't' want to drag them down."

**Summary of Messages with Ms. Forster:**

Ms. Forster asked Lovy for his number and that she wants to send some more information on May 25, 2018. On January 28, 2019, she messaged Mr. Lovy and reported that Plaintiff is ready to act on the case.

On May 23, 2019, Ms. Forster messaged Mr. Lovy to ask about his personal experience with Plaintiff's/Mr. Lovy's counsel. Ms. Forster explained that he had qualms about the case and thought they would only recover a few hundred thousand dollars. Ms. Forster's comments were made via voice memo within the chat and were initially muted in the recording we received from Mr. Lovy, and the Oorah Defendants had to make further requests for audio of the voice memos.

On May 24, 2021, Ms. Forster messaged Mr. Lovy inquired how people are donating to Gittie's fundraiser (we demonstrated that ZA'AKAH pressured the fundraiser creators enough that they abandoned the fundraiser). He explained that the Chessed Fund is an easy way to collect money because they have donors lined up and that the amount of money they raise is "insane." Ms. Forster then advised Mr. Lovy that the Oorah Defendants "tried suing Gittie's parents" because much of the abuse happened at her house and that the judge dismissed it. Mr. Lovy inquired of Ms. Forster whether Plaintiff filed the suit yet and requested a copy of the complaint so he can make a post. However, Ms. Forster cautioned him that Plaintiff's attorney instructed them to do nothing public yet, and that "the time will come" and they are waiting for a trial date. Ms. Forster provided the complaint and Mr. Lovy stated he will wait to post an initial video on the case.

Mr. Lovy's production also contained messages from January 24, 2020, to January 29, 2020, whereby Mr. Lovy requests Mr. James to attend a "livestream" co-hosted by Ms. Forster [6] to raise awareness of the CVA, but these appear to be a snippet. Communications between Mr. Lovy and the Plaintiff's/Mr. Lovy's counsel were not included. Furthermore, the enclosed direct messages between Ms. Forster and Ariella Goldberg-Kay of ZA'AKAH are undated and it is unclear whether there are additional messages below what the user is viewing on their screen. We also demonstrated that Ms. Forster contacted Mr. Lovy and forwarded two documents of email correspondence between Plaintiff and Gittie Sheinkopf to Mr. Lovy and that, upon receipt, Mr. Lovy explained to Ms. Forster that the correspondence is indicative of "classic grooming." *See, Dkt.* 123-11 86:18-87:25.

---

[6] The Oorah Defendants have filed a separate motion regarding Ms. Forster's failure to respond to a So-Ordered subpoena, which has delayed and impeded the completion of her deposition. *See* Dkt. 124

**The Motion for Protective Order**

The deposition of Mr. Lovy is required because it is material and the information sought in the March 8 Subpoena are relevant to the Oorah Defendants' defense and will assist the defense of this action. Mr. Lovy's deposition is required because we have now learned he was integral in collecting information about the alleged abuse that may assist the Oorah Defendants' defense. To the extent he is unable to complete his search, or the information is from "two phones ago", his deposition can fill in gaps in the documents. His testimony (and to the extent he can conduct a fulsome search and produce the requested documents) will illuminate his role in shepherding Ms. Forster and Plaintiff to her attorney after the CVA passed, coordinating some of the public relations social media campaign we were aware of—but did not realize led back to Ms. Forster and Plaintiff's/Mr. Lovy's counsel. This coordination is worth exploring in his deposition as classic impeachment evidence. We believe this coordination has frustrated discovery and delayed the completion of depositions.

Plaintiff's/Mr. Lovy's counsel's remaining arguments are either not genuine or are not supported by the record. Your Honor's prior Order already addressed documents to be provided by ZA'AKAH and any objections are either waived or ignore that the rider annexed to the March 8 Subpoena contemplates production directly related to issues in this case or maintained by Mr. Lovy. A review of the rider reveals that it is tailored to the issues in this case and involving the parties and Ms. Forster, and Mr. Lovy. The documents sought, for example are tied to Plaintiff's allegations and the issues in this case (numbers 2, 3, 5, 6). Mr. Lovy's communications with Plaintiff's counsel regarding the claims in this lawsuit or the defendants since the time of the alleged abuse (number 7) is discoverable and not privileged. Likewise, Mr. Lovy's investigation, or use of the media to publicize this matte (8,9) are not privileged and to the extent they pertain to Plaintiff's claims regarding her alleged abuse, are material and relevant to this matter. The nine items (eight, if you disregard the request he bring his driver's license to the deposition for identification purposes) are tied to the dates of the alleged abuse, the parties to this action, and non-privileged matters.

Any arguments regarding timing for Mr. Lovy's compliance and his ability to sit for a deposition are easily resolved, so long as the deposition and disclosure are conducted within a time frame approved by the Court. The scope of Mr. Lovy's involvement was only uncovered by Ms. Foster's recent deposition and the initial subpoena was issued promptly thereafter.[7] The Oorah Defendants have not refused to coordinate agreed upon depositions or discovery dates with any of the parties in this case. To that point, the date Mr. Lovy's deposition date set forth in the March 8 Subpoena was selected in the based on the placeholder previously circulated, however, Plaintiff's/Mr. Lovy's counsel advised he was "no longer available" on March 29, 2024. *See* Dkt. 123-10. The deposition was not scheduled "unilaterally" to disadvantage Plaintiff's/Mr. Lovy's counsel.

---

[7] When asked about a Tik Toker from ZA'AKAH at her deposition, Plaintiff testified that she was not aware of the same. *See* **Exhibit "B"** annexed hereto.

Plaintiff's/Mr. Lovy's counsel is also incorrect that the March 8, Subpoena violates the proportionality rule because it does not exceed the scope of discoverable information under Rule 26 for the reasons discussed above. The court need not exercise its discretion to limit discovery that is disproportional because the facile arguments that Mr. Lovy, who maintains a sophisticated social media presence, lacks the time, skill or resources to complete these searches are unavailing. He can, for example, search their social media posts and messages described by Ms. Forster at her deposition(s) more easily than any other party than Ms. Forster. *See* Dkt. 124. To the extent Plaintiff's/Mr. Lovy's counsel conflates these requests with co-defendant's coordination of ESI document production from Plaintiff, a separate undertaking that do not involve Mr. Lovy, the two have nothing to do with each other. The complaints about disproportionality have been addressed with defendants taking on the burden of retaining an outside vendor to assist with culling documents that Plaintiff or (in this case) Mr. Lovy can do.

Mr. Lovy has not provided his full communications with Plaintiff's counsel as required by the so-ordered subpoena. For example, his initial consultation with Plaintiff and Ms. Forster has not been provided, although we can see from this production that their communications date to 2018. The correspondence included in Mr. Lovy's privilege log, provided on March 20, 2024, only consists of a short time between February 7, 2024, and March 8, 2024. Moreover, Ms. Forster testified in her deposition that Mr. Lovy contacted Mr. James on Ms. Forster's behalf before the case began. *See.* Forster Dep. page 85. Ms. Forster's testimony suggests further correspondence between Mr. Lovy and Mr. James prior to February 2024 has yet to be produced to the Oorah Defendants. As the so-ordered subpoena requires all correspondence between Mr. Lovy and Plaintiff's counsel to be disclosed, unrestricted by date, so we do not believe that Mr. Lovy's privilege log is not inclusive of all withheld materials responsive to the subpoena and fails to meet Mr. Lovy's obligations under Fed. Rule 26 and Local Rule 26.2. Further, Mr. Lovy's privilege log does not include sufficient descriptions of the withheld discovery materials which allow the Oorah Defendants to adequately assess Mr. Lovy's assertions of attorney-client privilege. Mr. Lovy's privilege log contains ten identical descriptions of correspondence between Mr. Lovy, Mr. James, and on two occasions, Plaintiff - all of which the only provided description is "Oorah Defendant's Subpoena." The description provided is exceedingly general and unhelpful and fails to provide defendants with context necessary to verify their claims, and as such is not complaint with Fed. Rule 26 or Local Rule 26.2. We have revisited this issue a few times with Plaintiff's/Mr. Lovy's counsel a few times. *See* **Exhibit "C."**

Plaintiff's/Mr. Lovy's counsel decries an aggressive and overreaching approach to discovery by defendants. It's an empty cry. Consistent and persistent attention has been required to conduct discovery given the wide-ranging claims and the time period encompassed. A review of Dkt. 123 and 124, and the prior discovery motions already on the docket (including the prior protective order motions occasioned by Plaintiff's counsel's disclosure of an additional claimed period of abuse well into discovery, and additional alleged perpetrators of abuse required a reset of the deadlines set forth at Dkt. 76) demonstrate the need to revisit and reopen discovery. Discovery delays and consistent follow up are not attributable to the Oorah Defendants.

The balance of interests dictates that the Oorah Defendants should also be able to probe the coordination among Plaintiff, Ms. Forster, Mr. Lovy and Plaintiff because the production

already contains admissions and statements from Plaintiff about the Oorah Defendants' putative liability, impeachment material regarding Plaintiff that contradict her current claims, and because it reflects a coordinated effort to prejudice and disadvantage the Oorah Defendants through a calculated social media campaign. This is not a matter of cynicism, as Plaintiff's/Mr. Lovy's counsel claims, but a matter of fact. The Oorah Defendants were only recently advised by counsel for co-defendant that Plaintiff's/Mr. Lovy's counsel previously asked for his assistance to pressure the Oorah Defendants to capitulate and resolve the case: this social media campaign illustrated in Dkt. 123 and here reflects that strategy. The Oorah Defendant should be able to probe Mr. Lovy's, and Plaintiff's, role in the same.

The Oorah Defendants respectfully request that their motion be granted, and Plaintiff's/Mr. Lovy's counsel's motion(s) be denied. Mr. Lovy's deposition should be set for a date certain agreeable to all parties once he has conducted a search for the documents set forth in the March 8, 2024, Subpoena. Plaintiff's/Mr. Lovy's counsel may redact names of third parties not associated with Plaintiff's claims may be redacted or withheld as part of a proper privilege log.

The Oorah Defendants remain ready to conference this matter should Your Honor deem it appropriate.

Respectfully submitted,

/s/ Carla Varriale-Barker
Carla Varriale-Barker, Esq.

Enclosures: as stated

cc (via ECF):
Leander L. James, IV, Esq.   ljames@jvwlaw.net
Aaron Twersky, Esq.          atwersky@twerskylaw.com