

**JAMES, VERNON & WEEKS, PA**
*Helping people solve problems®*

**LEANDER L. JAMES**
**CRAIG K. VERNON**
1626 LINCOLN WAY
COEUR D'ALENE, ID  83814
Toll Free Telephone:  (888)-667-0683
Office Telephone: (208) 667-0683
ljames@jvwlaw.net
cvernon@jvwlaw.net

**TOLMAGE, PESKIN, HARRIS, FALICK**
**STEPHAN H. PESKIN**
**MATTHEW C. LOMBARDI**
20 VESEY STREET
NEW YORK, NY  10007
Toll Free Telephone:  (877) 298-3201
Office Telephone:  (212) 964-1390
peskin@tolmagepeskinlaw.com
lombardi@tomagepeskinlaw.com

March 29, 2024

Hon. Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, Courtroom 13B-South
Brooklyn, New York 11201

  Re: Sokolovsky v. Oorah, Inc. et al.
    Case No. 1:20-cv-04116

Dear Honorable Judge Pollak:

Plaintiff respectfully replies to Oorah Defendants' Response to Asher Lovy's Motion to Quash and for Protective Order, Dkt. 130, pg., as follows:

Defendants incorrectly state, "At the outset, there is no privilege regarding Mr. Lovy's communications with . . . Plaintiff's counsel . . ." Dkt. 130, pg. 1. This is wrong. Plaintiff's Counsel has also been Mr. Lovy's Counsel for years.  Mr. Lovy and *his* counsel have had numerous privileged communications, most irrelevant to this case.  For example, when Mr. Lovy has been threatened by individuals in the Orthodox community with lawsuits or personal harm for publishing truthful information about child, sexual abusers in the Orthodox Jewish Community, he has communicated with his attorney for legal help and guidance.  Oorah Defendants are not entitled to these privileged communications.  To require disclosure of such communications would invade the most sacred nature of the attorney-client privilege—to protect clients' access to legal advice in their most trying times.

Defendants then pivot to ZA'AKAH, continuing their conflation of Mr. Lovy with the organization he works for, saying, "Lovy's organization, ZA'AKAH, states on its website, www.zaakah.org, that it does not directly provide any victim services and that it refers people to others based on their needs." Dkt. 130, pg. 1.  First, Mr. Lovy is not ZA'AKAH.  Second, referring abuse survivors to professionals for help is providing a service—a referral service.  Third, why does it matter whether ZA'AKAH provides victim services directly or indirectly?  Fourth, providing a referral service for abuse survivors necessarily involves abuse survivors sharing a great deal of confidential information with the service, such as the identity of their perpetrator and the nature of their abuse. Mr. Lovy regularly receives numerous inquiries from child sexual abuse survivors who

share their true stories of abuse with him so he can determine whom they should be referred to for help. Defendants do not have a right to inquire about these survivors and to learn the substance of their confidential communications with Mr. Lovy, other than his communications with Plaintiff. Communications with other survivors are not relevant and "proportional to the needs of the case." See Fed. R. Civ. Pro. 26.

Without any supporting law, Defendants seem to argue Mr. Lovy waived any privilege as to their second subpoena (Dkt. 126-1) because he did not immediately object to the first subpoena (Dkt. 117-1). See Dkt. 130, pg. 2. Mr. Lovy complied with the first subpoena and produced the documents requested, except privileged emails between him and his attorney. See Dkts. 126-3 and 126-4. Defendants' argument is based on the false premise that Mr. Lovy did not comply with the first subpoena, which he did.

Next, Defendants conflate the two subpoenas, saying, "The information sought [in Dkt. 117-1] is similar to (and already requires production of documents and information on behalf of ZA'AKAH) is foundational to what is sought in the March 8, subpoena. [Dkt. 126-2]." Dkt. 130, pg. 2. The two subpoenas are not "similar." *Id*. The first is for the production of "correspondence from Mr. Lovy and/or anyone representing his organization ZA'AKAH with either Plaintiff, Dorina Sokolovsky, Leah Forster, and/or plaintiff's counsels, JAMES VERNON & WEEKS, PA, or TOLMAGE PESKIN HARRIS & FALICK, including WhatsApp Messages, text messages, email communications, direct messages on all social medial platforms, call logs, and/or all other communications from 2012 to present." Dkt. 117-1. The second subpoena requires Mr. Lovy to sit for a deposition and to bring with him nine enumerated categories of data and documents, including those of a third party, ZA'AKAH. Dkt. 126-1.

Next, Defendants make a confusing argument that Mr. Lovy has not established he and his attorney have had privileged communications. He and his attorney truthfully represented in their Motion, and state forcefully again here, that Mr. Lovy and his attorney have an attorney-client relationship and have had many privileged communications. For example, in his Motion, Mr. Lovy (through his attorney) stated, "Plaintiff's Counsel has represented Mr. Lovy since 2019 in many aspects of his work, including legal research; investigation; defense of retaliation claims, threats and intimidation; protection of trade secrets and confidential information; and in other legal matters." Dkt. 126, pg. 2. Defendants seem tone-deaf to these facts. Mr. Lovy and his attorney have an attorney-client relationship and have exchanged privileged communications Defendants are not entitled to, period, full stop.

Compounding their confusing argument about the attorney-client relationship between Mr. Lovy and his attorney, Defendants seem to argue that just because Mr. Lovy's attorney did not identify himself as Mr. Lovy's attorney when the first subpoena was served on Mr. Lovy, his attorney must not have represented him at that time. There is such a thing in the law as "confidentiality." Confidentiality is different from privilege. Confidential information "consists of information gained during or relating to the representation of a client . . .," (Code of Professional Responsibility [22 NYCRR 1200] Rule 1(6)(a)). The fact that there is an existing attorney-client relationship between the attorney and his client is a fact "relating to the representation of a client." *Id*. This attorney, consistent with the Code of Professional Responsibility, does not reveal he has an attorney-client relationship between him and others unless necessary to the

representation. For example, among this attorney's clients include judges, physicians, court personnel and friends of his colleagues, and he does not reveal that he represents them unless necessary. Further, general representation, as with Mr. Lovy and counsel, does not dictate that the attorney must represent the client in every legal matter. In this situation, Mr. Lovy at one point specifically engaged his counsel to address Defendants' efforts to subpoena his records. The attorney-client relationship, both generally and specifically exists.

Defendants incorrectly complain, "there are no examples of confidential information, trade secrets, confidential research, development, and confidential information in his non-profit work whatsoever that were provided to support the motions to quash or for a protective order regarding the March 8 Subpoena." Dkt. 130, pg. 3. Mr. Lovy, through his counsel, has repeatedly and truthfully represented, and represents here, that he communicates with abuse survivors on almost a daily basis and learns of the identity of their alleged abuser, the facts of their abuse, and other related, confidential information. He has repeatedly and truthfully represented that he has been the subject of threats from individuals in the Jewish Orthodox Community. For example, his counsel has told this Court: "Mr. Lovy is the recipient of confidential information in his work, including disclosures by child sexual abuse victims in the Jewish Orthodox community," and "Mr. Lovy has been the target of threats, retaliation and intimidation within the Orthodox Jewish community by known sexual abusers, accused sexual abusers, family members of abusers and accused abusers, and others in the Orthodox Jewish community protective of abusers and accused abusers." Dkt. 126, pg. 2. He has further stated, "He utilizes trade secrets, confidential research, development, and commercial information in his non-profit work." *Id.* These are true statements of fact. It seems as if Defendants insist Mr. Lovy must divulge this information in detail, which defeats the purpose of a protective order. However, his attorney here represents that he has counseled Mr. Lovy regarding confidential information gained from abuse victims, such as how they were abused (e.g. oral or vaginal penetration), where (e.g. in a synagogue or bath house) and by whom (e.g. by a rabbi), and confidential research, development and trade secrets relating to locating and identifying abusers, warning parents of potential abusers and advancing legislation helpful to abuse survivors. He has counseled Mr. Lovy regarding threats of lawsuits and personal threats.

Fatal to Defendants' position, is their failure to address the law of proportionality under Fed. R. Civ. Pro. 26. They ask the Court to forgo any "exercise [of] its discretion to limit discovery that is disproportional because the facile arguments that Mr. Lovy, who maintains a sophisticated social media presence, lacks the time, skill or resources to complete these searches are unavailing." Dkt. 30, pg. pg. 7. This argument misses the point. The question relating to proportionality is not whether Mr. Lovy has the technical skills of a discovery vendor to extract data (which he does not). The question is whether the data he may extract is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); 26(c)(1); see Allstate Ins. Co. v. All Cty., LLC, No. 19 Civ. 7121 (WFK) (SJB), 2020 U.S. Dist. LEXIS 176297, 2020WL5668956, at *1 (E.D.N.Y. Sept. 22, 2020)." *State Farm Mut. Auto. Ins. Co. v. Khait*, 21 Civ. 6690, 2023 U.S. Dist. LEXIS 171968, *5 (E.D.N.Y. 2023).

Contrary Defendants' request that the Court not exercise its discretion, the Court "[o]n motion or on its own . . . *must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the burden or expense of the proposed discovery outweighs its

likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Defendants do not adequately address how the benefits of the discovery sought outweigh the burden, time and expense of the proposed discovery. Nor do they meet their burden to explain how it will resolve issues in this case.

In conclusion, Mr. Lovy's Motion to Quash and Motion for Protective Order should be granted.

    Respectfully submitted,

    JAMES, VERNON & WEEKS, P.A.
    TOLMAGE, PESKIN, HARRIS, FALICK

    /s/ Leander L. James

By: _____
    Leander L. James